127 Cal.Rptr.2d 319 (2002)
103 Cal.App.4th 1139
The PEOPLE, Plaintiff and Respondent,
v.
Louis Willie JONES, Defendant and Appellant.
No. B154006.
Court of Appeal, Second District, Division Three.
November 25, 2002.
Review Denied February 19, 2003.[*]
*320 Tara Selver, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Jaime L. Fuster and Victoria B. Wilson, Supervising Deputy Attorneys General, Plaintiff and Respondent.
ALDRICH, J.
After a jury trial, defendant and appellant Louis Willie Jones was convicted of shooting at an inhabited dwelling and possession of a firearm by a felon. Jones was sentenced to a total term of nine years in prison. Jones's sole contention on appeal is that Penal Code section 654[1] precluded imposition of concurrent sentences on the offenses. We conclude that, when an ex-felon commits a crime using a firearm, and arrives at the crime scene already in possession of the firearm, it may reasonably be inferred that the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime. Therefore, section 654 will not bar punishment for both firearm possession by a felon (§ 12021, subd. (a)(1)) and for the primary crime of which the defendant is convicted. We therefore affirm.

*321 FACTUAL AND PROCEDURAL BACKGROUND

1. Facts.

Kyshanna Walter[2] ended a dating relationship with Jones after he became violent towards her. Jones continued to telephone her and appear at her home and school, and Kyshanna obtained a restraining order against him.
On April 23, 2001, Jones and an unidentified man drove in a white car to the Walter home and parked in front of the house. The unidentified man rang the doorbell while Jones remained in the passenger seat of the car. The unidentified man asked Kyshanna's brother, Glenn, if he could speak to Kyshanna. When Glenn stated that Kyshanna was not available, the man and Jones departed in the white car.
Approximately fifteen minutes later, the white car slowly drove past the Walter home. Jones, who was still in the passenger seat, fired several gunshots at the Walter home.
Approximately one week later, Jones's residence was searched. No gun or ammunition was recovered during that search or at any other time.
Jones presented an alibi defense. He did not testify, but stipulated that he had been convicted of a prior felony.

2. Procedure.

Trial was by jury. Jones was found guilty of shooting at an inhabited dwelling (§ 246) and being a felon in possession of a firearm (§ 12021, subd. (a)(1)). The jury acquitted Jones of two counts of assault with a firearm. In a bifurcated proceeding, the trial court found true allegations that Jones had served two prior prison terms within the meaning of section 667.5, subdivision (b). It sentenced Jones to a total term of nine years in prison, configured as follows. On count 3, shooting at an inhabited dwelling, the court imposed the upper term of seven years. On count 4, possession of a firearm by a felon, the court imposed the upper term of three years, to run concurrently with the sentence on count 3. Two additional one-year terms were imposed pursuant to section 667.5, subdivision (b), to run consecutive to the term imposed on count 3. The trial court also imposed various fines.

DISCUSSION

Section 654 did not preclude the imposition of a concurrent sentence for the possession of a firearm by a felon conviction.
Jones asserts that, because his possession of the gun was incidental to and simultaneous with the primary offense of shooting at an inhabited dwelling, section 654 precluded the imposition of sentence on both offenses. We disagree.
Section 654, subdivision (a), provides in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 therefore "`precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. "Whether a course of criminal conduct is divisible ... depends on the intent and objective of the actor." [Citations.] "[I]f all the offenses were merely incidental to, or were the means of accomplishing *322 or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." [Citation.]' [Citation.]" (People v. Spirlin (2000) 81 Cal.App.4th 119, 129, 97 Cal.Rptr.2d 1; People v. Latimer (1993) 5 Cal.4th 1203, 1207-1208, 23 Cal.Rptr.2d 144, 858 P.2d 611; Neal v. State of California (1960) 55 Cal.2d 11, 19, 9 Cal.Rptr. 607, 357 P.2d 839.) However, if the defendant harbored "multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]" (People v. Cleveland (2001) 87 Cal.App.4th 263, 267-268, 104 Cal.Rptr.2d 641; People v. Solis (2001) 90 Cal.App.4th 1002, 1021, 109 Cal.Rptr.2d 464; People v. Alvarado (2001) 87 Cal.App.4th 178, 196, 104 Cal. Rptr.2d 624.)
Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. (People v. Hutchins (2001) 90 Cal.App.4th 1308, 1312, 109 Cal.Rptr.2d 643; People v. Herrera (1999) 70 Cal.App.4th 1456, 1466, 83 Cal. Rptr.2d 307.) Its findings will not be reversed on appeal if there is any substantial evidence to support them. (People v. Hutchins, supra, at p. 1312, 109 Cal. Rptr.2d 643; People v. Herrera, supra, at p. 1466, 83 Cal.Rptr.2d 307; People v. Nichols (1994) 29 Cal.App.4th 1651, 1657, 35 Cal.Rptr.2d 478.) We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. (People v. Hutchins, supra, 90 Cal.App.4th at pp. 1312-1313, 109 Cal.Rptr.2d 643.)
"`Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person,[3] constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.'" (People v. Bradford (1976) 17 Cal.3d 8, 22, 130 Cal.Rptr. 129, 549 P.2d 1225 [quoting People v. Venegas (1970) 10 Cal.App.3d 814, 821, 89 Cal.Rptr. 103].)
It is clear that multiple punishment is improper where the evidence "demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense ...." (People v. Ratcliff (1990) 223 Cal.App.3d 1401, 1412, 273 Cal. Rptr. 253.) For example, in People v. Bradford, supra, 17 Cal.3d 8, 130 Cal.Rptr. 129, 549 P.2d 1225, the defendant was stopped by a Highway Patrol Officer for speeding. He wrested away the officer's revolver and shot at the officer with it. (Id. at p. 13, 130 Cal.Rptr. 129, 549 P.2d 1225.) The California Supreme Court found punishment for both assault with a deadly weapon upon a peace officer and possession of a firearm by an ex-felon was prohibited by section 654. The defendant's possession of the officer's revolver was not antecedent and separate from the *323 use of the revolver in assaulting the officer. (Id. at pp. 22-23, 130 Cal.Rptr. 129, 549 P.2d 1225.)
Likewise, in People v. Venegas, supra, 10 Cal.App.3d at p. 821, 89 Cal.Rptr. 103, the defendant shot a companion in a bar. A waitress heard a gunshot, turned to see the defendant holding a gun, and heard two more shots. The defendant was shot in the leg during the incident. There was no showing that the defendant had possessed the gun before the assault, and the defense presented evidence suggesting that he obtained it during a struggle at the bar moments before the shooting. (Id. at pp. 818-819, 821, 89 Cal.Rptr. 103.) Section 654 barred punishment for possession of a firearm by an ex-felon in addition to punishment for assault with a deadly weapon. (Id. at p. 821, 89 Cal.Rptr. 103.) The evidence showed "a possession only at the time defendant shot [the victim]. Not only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]." (Ibid.)
On the other hand, it is clear that multiple punishment is proper where the evidence shows that the defendant possessed the firearm before the crime, with an independent intent. In People v. Killman (1975) 51 Cal.App.3d 951, 124 Cal.Rptr. 673, the defendant had given his girlfriend money to purchase a gun. Several months before the robbery, the defendant used the gun for target practice, and took it with him when he moved to a new residence. (Id. at p. 955, 124 Cal.Rptr. 673.) Section 654 did not bar punishment on both first degree robbery and firearm possession charges; the defendant was properly punished "for his own personal possession of the gun before the robbery." (Id. at p. 959, 124 Cal.Rptr. 673; e.g., People v. Garfield (1979) 92 Cal.App.3d 475, 478, 154 Cal.Rptr. 869 [defendant was properly sentenced for burglary and possession of a weapon by a narcotics addict, based upon his possession of a firearm stolen during the burglary; he had the weapon in his personal possession when arrested six days after the burglary and had not stored it with the rest of the fruits of the burglary].)
Based upon these principles, we conclude that section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm. In People v. Ratcliff, supra, 223 Cal.App.3d 1401, 273 Cal.Rptr. 253, the defendant used a handgun to commit two robberies approximately one hour and one half apart. When he was arrested approximately one half hour later, the handgun was still in his possession. Ratcliff rejected the argument that section 654 precluded punishment for both an ex-felon in possession of a firearm conviction and a firearm use enhancement. (Id. at pp. 1407-1408, 273 Cal.Rptr. 253.) The court first turned to the "important policy consideration" underlying section 12021. (Id. at p. 1409, 273 Cal.Rptr. 253.) Ratcliff distinguished violation of section 12021 from other weapons charges, noting that non-felons could be charged with other firearms violations, but not with violation of section 12021. It observed that an exfelon was prohibited from carrying a firearm even if pardoned or granted a certificate of rehabilitation, if his or her prior felony involved the use of a dangerous weapon. (Id. at pp. 1409-1410, 273 Cal. Rptr. 253.) These considerations underscored Ratcliff's conclusion that a conviction for firearm possession by a felon represents "a unique circumstance in the minefield of section 654 cases in that this charge involves an important policy consideration." (Id. at p. 1409, 273 Cal.Rptr. 253.) The Legislature clearly intended, in *324 enacting section 12021, to minimize the danger to public safety arising from free access to firearms, a danger presumed to be greater when the person possessing the concealable firearm is an ex-felon. (Id. at p. 1409, 273 Cal.Rptr. 253 [quoting People v. Bell (1989) 49 Cal.3d 502, 544, 262 Cal. Rptr. 1, 778 P.2d 129].)
After reviewing the relevant California authorities, Ratcliff distilled the rule cited above, that section 654 operates to bar multiple punishment where the evidence shows that the firearm came into the defendant's possession fortuitously "at the instant of committing another offense...." (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1412, 273 Cal.Rptr. 253.) It concluded that another group of cases holding that section 654 barred multiple punishment (People v. Kane (1985) 165 Cal.App.3d 480, 488, 211 Cal.Rptr. 628; People v. Cruz (1978) 83 Cal.App.3d 308, 332-333, 147 Cal. Rptr. 740; People v. Burnett (1967) 251 Cal.App.2d 651, 658, 59 Cal.Rptr. 652), had either failed to address the issue or were wrongly decided. Ratcliff reasoned, "[a] violation of section 12021, subdivision (a) is a relatively simple crime to commit: an ex-felon who owns, possesses, or has custody or control of a firearm commits a felony. Implicitly, the crime is committed the instant the felon in any way has a firearm within his control." (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1410, 273 Cal.Rptr. 253, internal fn. omitted; People v. Spirlin, supra, 81 Cal.App.4th at p. 130, 97 Cal.Rptr.2d 1.) Ratcliff explained, "[u]nlike in Bradford and Venegas, the defendant already had the handgun in his possession when he arrived at the scene of the first robbery. A justifiable inference from this evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued before, during and after those crimes." (People v. Ratcliff, supra, at p. 1413, 273 Cal.Rptr. 253.) "Commission of a crime under section 12021 is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon. [Citations.] In other words, in the case here, defendant's intent to possess the weapon did not import or include the intent to commit the robberies." (Id. at p. 1414, 273 Cal.Rptr. 253; People v. Spirlin, supra, 81 Cal. App.4th at p. 131, 97 Cal.Rptr.2d 1.)
Ratcliff relied in part upon our decision in People v. Hudgins (1967) 252 Cal. App.2d 174, 60 Cal.Rptr. 176. There, the defendant, an ex-felon, broke into his wife's house, shot and killed a male guest, and threatened to kill his wife. On appeal, he argued that section 654 barred punishment for both the murder and his violation of section 12021. We rejected this contention. We acknowledged that section 654 bars multiple punishment where the offenses are committed "by one act or in a series of acts having but a single purpose ...." (Id. at p. 185, 60 Cal.Rptr. 176.) We concluded, however, "such was not the case. The acts constituting the offenses were separable, Possession of the gun constituted one offense, and this was an act separate and apart from any use that was made of the gun, and would have been a completed offense even if no use had been made of it. Appellant was properly sentenced for both offenses." (Ibid.)
Ratcliff also cited People v. Harrison (1969) 1 Cal.App.3d 115, 81 Cal.Rptr. 396, in which a defendant's punishment for violations of both sections 12021 and 12031 (carrying a loaded firearm in a vehicle on a public street) was upheld. People v. Harrison explained that the two statutes had different goals. Section 12021 addressed the danger of permitting ex-felons to possess *325 concealable firearms, and "the risk to public safety derives from the type of person involved." (Id. at p. 122, 81 Cal.Rptr. 396.) Section 12031 addressed the hazard arising when any person carried a loaded firearm in public. "The `intent or objective' underlying the criminal conduct is not single, but several, and thus does not meet another of the tests employed to determine if Penal Code section 654 is violated. [Citation.] For an ex-convict to carry a concealable firearm is one act. But loading involves separate activity.... Thus, two acts, not a single one, are necessarily involved and bring our case outside the prohibition against double punishment for a single act or omission." (Id. at p. 122, 81 Cal.Rptr. 396.)
We find Ratcliff, and the authorities upon which it relied, directly applicable here. In the instant matter the trial court stated that section 654 did not bar concurrent sentences, but did not state the factual basis for its finding. However, implicit in its imposition of concurrent sentences for the firearm possession by a felon and the shooting at an inhabited dwelling offenses was a finding that the firearm possession was a separate and distinct offense. (People v. Blake (1998) 68 Cal.App.4th 509, 512, 80 Cal.Rptr.2d 308 [trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if supported by substantial evidence].) The record supports the trial court's implied findings, because the evidence was sufficient to allow the inference that Jones's possession of the firearm was antecedent to and separate from the primary offense of shooting at an inhabited dwelling. It strains reason to assume that Jones did not have possession for some period of time before firing shots at the Walter home. Any other interpretation would be patently absurd. Jones committed two separate acts: arming himself with a firearm, and shooting at an inhabited dwelling. Jones necessarily had the firearm in his possession before he shot at Kyshanna's house, when he and his companion came to the house 15 minutes before the shooting, or, at the very least, when they began driving toward the house the second time. It was therefore a reasonable inference that Jones's possession of the firearm was antecedent to the primary crime. (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1413, 273 Cal.Rptr. 253.) Section 12021 is violated whenever a felon intentionally has the weapon in constructive or actual possession. (People v. Spirlin, supra, 81 Cal.App.4th at p. 130, 97 Cal.Rptr.2d 1.) Jones necessarily must have had either actual or constructive possession of the gun while riding in the car, as evidenced by his control over and use of the gun during the shooting. Jones's violation of section 12021 was complete the instant Jones had the firearm within his control prior to the shooting. (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1410, 273 Cal.Rptr. 253.)
The evidence likewise supported an inference that Jones harbored separate intents in the two crimes. Jones necessarily intended to possess the firearm when he first obtained it, which, as we have discussed, necessarily occurred antecedent to the shooting. That he used the gun to shoot at Kyshanna's house required a second intent in addition to his original goal of possessing the weapon. Jones's use of the weapon after completion of his first crime of possession of the firearm thus comprised a "separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon." (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1414, 273 Cal.Rptr. 253.) That Jones did not possess the weapon for a lengthy period before commission *326 of the primary crime is not determinative. (People v. Latimer, supra, 5 Cal.4th at pp. 1211-1212, 23 Cal.Rptr.2d 144, 858 P.2d 611 [application of section 654 has been limited by decisions narrowly interpreting the length of time the defendant had a specific objective]; In re Hayes (1969) 70 Cal.2d 604, 609, 75 Cal.Rptr. 790, 451 P.2d 430; People v. Trotter (1992) 7 Cal.App.4th 363, 367-368, 8 Cal.Rptr.2d 648 [each shot fired at police officer "evinced a separate intent to do violence" and could be separately punished although fired one minute apart]; People v. Garfield, supra, 92 Cal. App.3d at p. 478, 154 Cal.Rptr. 869 [the circumstances of possession, rather than the mere passage of time, was the key element in determining whether section 654 applied].)
Moreover, prohibiting multiple punishment under the circumstances presented here would not further the policies underlying sections 654 and 12021. Section 654's purpose is to ensure that punishment is commensurate with a defendant's culpability. (People v. Latimer, supra, 5 Cal.4th at p. 1211, 23 Cal.Rptr.2d 144, 858 P.2d 611; People v. Alvarado, supra, 87 Cal.App.4th at p. 196, 104 Cal.Rptr.2d 624; People v. Cleveland, supra, 87 Cal.App.4th at p. 268, 104 Cal.Rptr.2d 641.) This concept "works both ways. It is just as undesirable to apply the statute to lighten a just punishment as it is to ignore the statute and impose an oppressive sentence." (People v. Monarrez (1998) 66 Cal.App.4th 710, 715, 78 Cal.Rptr.2d 247.) Section 12021 uniquely targets the threat posed by felons who possess firearms. (People v. Ratcliff, supra, 223 Cal.App.3d at p. 1409, 273 Cal.Rptr. 253.) We see no reason why a felon who chooses to arm himself or herself in violation of section 12021 should escape punishment for that offense because he or she uses the firearm to commit a second offense. A felon who, for example, uses a gun to commit a burglary is more culpable than a felon who commits the same burglary without a gun, or than a felon who arms himself but does not commit any additional crimes. Therefore punishment for both the possession of a firearm by a felon and for the crime committed using that firearm, i.e., shooting at an inhabited dwelling, is commensurate with Jones's culpability and furthers the legislative goal of discouraging firearm possession by felons.
Jones cites People v. Bradford, supra, 17 Cal.3d 8, 130 Cal.Rptr. 129, 549 P.2d 1225, and People v. Venegas, supra, 10 Cal.App.3d 814, 89 Cal.Rptr. 103, in support of his claim. However, as explained in Ratcliff, these cases are distinguishable. Unlike in Bradford and Venegas, the evidence was not susceptible to a conclusion that Jones fortuitously came into possession of the gun at the moment he drove by Kyshanna's house the second time. There was no evidence suggestingand no evidence from which it could reasonably be inferredthat Jones mysteriously happened to discover the loaded gun in the car while driving past the house. As we have explained, he necessarily must have had actual or constructive possession of the gun when he entered the car.[4]

*327 DISPOSITION
The judgment is affirmed.
We concur: CROSKEY, Acting P.J., and KITCHING, J.
NOTES
[*] Kennard, J., dissented.
[1] All further undesignated statutory references are to the Penal Code.
[2] For ease of reference, and with no disrespect, Kyshanna Walter and her brother Glenn Walter will be referred to by their first names.
[3] Section 12021 was amended in 1989 to prohibit possession of any firearm by a felon. (People v. Mills (1992) 6 Cal.App.4th 1278, 1282, 8 Cal.Rptr.2d 310.)
[4] Jones also cites People v. Jurado (1972) 25 Cal.App.3d 1027, 1033-1034, 102 Cal.Rptr. 498, in support of his argument. We observe that Jurado, as well as People v. Hays (1983) 147 Cal.App.3d 534, 552-553, 195 Cal.Rptr. 252, and People v. Garcia (1978) 86 Cal. App.3d 314, 317, 150 Cal.Rptr. 93, did not consider punishment for a violation of section 12021; instead, they addressed the application of section 654 in regard to other weapons charges, i.e., possession of a sawed-off firearm (section 12020) or of carrying a concealed weapon (section 12025). We have no occasion here to address whether our analysis is equally applicable to violations of weapons statutes other than section 12021. However, to the extent the reasoning in Jurado, Hays, and Garcia is inconsistent with our analysis herein, we respectfully disagree with them.