Filed 6/30/14  P. v. Martinez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILFREDO MARTINEZ,<br><br>    Defendant and Appellant. | B249606<br><br>(Los Angeles County<br>Super. Ct. No. PA065686) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

We affirm defendant Wilfredo Martinez's convictions for first degree murder and being a felon in possession of a firearm. We reject his arguments that the jury instructions reflected numerous errors and that the court erred in ordering he serve his sentences for both crimes consecutively.

## FACTS AND PROCEDURE

Interpreting the evidence in the light most favorable to the verdict, the record shows that defendant and Jose Carabantes were both members of the Mara Salvatrucha (MS) gang. On June 28, 2009, in the afternoon, defendant and Carabantes were talking at a residence in Arleta. Defendant said that he had been beaten up by the Pacoima gang. In response, defendant shot at the windshield of a Pacoima gang member's car. Carabantes described defendant's actions as childish, and his criticism upset defendant. Defendant left the residence.

Later that evening defendant returned to the residence with Maria Garcia. Carabantes was there drinking with his friends and several members of the MS gang were at the residence. Defendant and Carabantes argued for about 15 minutes. Defendant was offended when Carabantes said "nowadays anybody can call themselves a gangster." Defendant told Carabantes that he felt disrespected. Carabantes believed he should be respected because he was older and identified himself as an original gangster. Carabantes offered to fight defendant in a fistfight in the same manner gang members often resolve disputes. Defendant said, "this fool." Defendant then shot Carabantes multiple times, killing him. Defendant fled.

Prior to the shooting, defendant had been drinking. He started drinking at Garcia's house and continued drinking at the Arleta residence. Garcia was very drunk that night.[1]

---

[1]    Garcia testified that after defendant and Carabantes argued, defendant left and Carabantes followed him. She also testified that defendant said to give Carabantes "court," which meant Carabantes would be beaten by a group of gang members for 13 seconds.

Following a jury trial, defendant was convicted of first degree murder.  With respect to that charge, jurors found true the allegation that defendant personally discharged a firearm, causing great bodily injury (Pen. Code, § 12022.53, subd. (d).)  Defendant was convicted of possession of a firearm by a felon and had stipulated that he suffered a prior felony conviction.

The court sentenced defendant to a four-year determinate term and an 80-year-to-life indeterminate term.  The 80-year term was calculated by imposing the 25-year-to-life sentence for murder and doubling it because of defendant's prior conviction, adding an additional 25-year-to-life term for the personal discharge of the firearm, and five years for the prior serious felony conviction.

## DISCUSSION

Defendant alleges the trial court made several instructional errors and erred in imposing consecutive sentences.  As we explain, his arguments lack merit.

### 1.  *Alleged Instructional Error (Second Degree Murder Instruction)*

Defendant argues that jurors were not properly instructed on second degree murder and that jurors should have been instructed as follows:  all murders that were not of the first degree were of the second degree.  We conclude the given instructions were adequate to distinguish first and second degree murder.[2]

With the consent of both the prosecutor and defense counsel, jurors were instructed with CALCRIM No. 520 as follows:  "The defendant is charged in Count One with murder in violation of Penal Code section 187.  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant committed an act that caused the death of another person.  [¶]  AND  [¶]  2. When the defendant acted, he had a state of mind called malice aforethought.  [¶]  There are two

---

[2]     The issue is not forfeited because the trial court was required to sua sponte instruct on all general principles of law "that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case." (*People v. Carter* (2003) 30 Cal.4th 1166, 1219.)

kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with *express malice* if he unlawfully intended to kill. [¶] The defendant acted with *implied malice* if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act was dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life. [¶] Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time. [¶] If you decide that the defendant committed murder, you must then decide whether it is murder of the first or second degree."

The last sentence informed jurors they were required to determine whether murder was of the first or second degree. To make this determination jurors were instructed with CALCRIM No. 521, which provides: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the acts that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] The requirements for second degree murder based on express or implied malice are explained in CALCRIM No. 520, First or

4

Second Degree Murder With Malice Aforethought.  [¶]  The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder."

"'Murder that is premeditated and deliberated is murder of the first degree.'" (*People v. Pearson* (2013) 56 Cal.4th 393, 443.)  Jurors were specifically instructed that to find first degree they had to conclude that that defendant acted willfully, deliberately and with premeditation.  The instructions plainly differentiated first and second degree murder.  Under the given instructions, jurors could have convicted defendant of first degree murder only after finding that he premeditated and deliberated.  Defendant therefore demonstrates no error.

## 2. *Alleged Instructional Error (Voluntary Intoxication)*

Defendant argues that the court erred in refusing to instruct jurors that voluntary intoxication may reduce the murder charge to voluntary manslaughter.[3]  There was no error.  Defendant did not testify and no witness testified that defendant was intoxicated.  Although there was evidence that defendant had been drinking on the night of the murder, that evidence does not support his theory that he was not capable of forming the intent for first degree murder.  Defendant's rank speculation that he drank to the point of intoxication is insufficient to show an instruction on involuntary intoxication was warranted.  (*People v. Roldan* (2005) 35 Cal.4th 646, 715-716,

---

[3]      Defendant argues the trial court should have given the following instruction: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way.  You may consider that evidence only in deciding whether the defendant acted with an intent to kill[,] [or] [the defendant acted with deliberation and premeditation[,]]. . . ¶  A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.  [¶]  You may not consider evidence of voluntary intoxication for any other purpose."

5

disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

### 3. Alleged Instructional Error (Provocation)

Defendant argues that the court should have instructed jurors with CALCRIM No. 522, which states: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]"

Defendant further argues that "this court may reasonably infer" that defendant requested the instruction in the trial court because the court gave a different instruction on voluntary manslaughter. The record, however, does not support the inference that defendant requested the instruction. The court reviewed on the record the instructions requested by the parties and there was no indication defendant's counsel requested CALCRIM No. 522. The issue is therefore forfeited. (*People v. Middleton* (1997) 52 Cal.App.4th 19, 33, disapproved on other grounds in *People v. Gonzalez* (2003) 31 Cal.4th 745, 752, fn. 3.)

In any event, defendant fails to show he suffered prejudice from the alleged error in failing to instruct jurors they could consider whether provocation was sufficient to reduce the first degree murder to second degree murder. He argues that "[t]he jury may reasonably have found the provocation sufficient to reduce [first degree] murder to [second degree] despite finding the same provocation insufficient to reduce murder to manslaughter." He further argues that the court's instruction on voluntary manslaughter indicated that there was evidence from which jurors could conclude defendant acted "rashly and without due deliberation." However, if jurors had concluded defendant did not deliberate they would not have convicted him of first

6

degree murder. CALCRIM No. 521 as quoted above required jurors to find premeditation and deliberation to convict him of first degree murder.

### 4. Alleged Sentencing Error

Defendant argues he could not be sentenced to a consecutive term for being a felon in possession of a firearm because the murder and the possession charge resulted from a single indivisible course of conduct. According to defendant, there "is every reason to believe that" he "picked up the gun after arriving at the party at a home regularly frequented by gang members."

Penal Code section 654, subdivision (a), provides in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Section 654 therefore '"precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" [Citation.]'" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]'" (*Ibid.*) We review the trial court's implicit finding of multiple intent in the light most favorable to the finding. (*Ibid.*)

"[I]f the evidence demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense, section 654 would bar a separate punishment for the possession of the weapon by an

ex-felon." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412.)  Here no such fortuitous circumstance was shown.  There was no evidence defendant picked up the gun at the party.  To the contrary, the record supported the inference that he had the gun in his possession prior to the shooting as it shows he had a gun when he shot the windows of a rival gang's car.  Additionally, Garcia testified she previously saw defendant with a gun, even though she did not see it on the night of the shooting.  The trial court's implied finding is supported by the evidence in the record.[4]

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.

---

[4]     Because we find no error, we need not consider defendant's argument that the cumulative error prejudiced him.

8