Filed 4/26/16  P. v. Baganha CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID BAGANHA,<br><br>Defendant and Appellant. | F069626<br><br>(Super. Ct. No. BF152643A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County. Gary T. Friedman, Judge.

Monique Q. Boldin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Defendant David Baganha was convicted by a jury in count 1 of willful infliction of corporal injury, a violation of Penal Code[1] section 273.5, subdivision (a), and in count 2 of criminal threats, a violation of section 422.  The trial court imposed a sentence of three years for the count 1 offense and a consecutive eight months for the count 2 offense.  Baganha contends the imposition of a consecutive term for the count 2 offense violates section 654.  We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Baganha and the victim, C.C., knew each other from childhood and had lived together for 16 years.  In 2012, the relationship began to deteriorate.  The evening of January 9, 2014, C.C. was watching television when Baganha came over, lifted her up, and threw her to the other side of the couch.  C.C. landed on her back.  Baganha put a pillow over her face and began calling her names, including "fucking whore," and accusing her of "screwing everybody" and being involved in a "sex club."

C.C. kept trying to push the pillow off her face because it was getting hard for her to breathe.  Baganha "adjusted himself" to get a better "hold on the pillow."  When he did so, C.C. kicked him between the legs and scratched his face.  C.C. rolled off the couch and landed on her stomach.  Baganha put his knee on her back, pushed the pillow under her face, and held her head down.  C.C. estimated that during the entire time of the assault, Baganha held a pillow to her face eight or nine times.

Baganha told C.C., "[B]itch, you're gonna die tonight, and they're going to find your body in the Kern River."  Baganha shoved a paper tablet into C.C.'s hands and told her to write down a "confession of infidelity."  Baganha hovered over C.C. while he dictated her "confession" and she was writing; C.C. was unable to get away from him.  C.C. was scared and did whatever Baganha asked her to do.  The "confession" was five pages.

[1]References to code sections are to the Penal Code unless otherwise specified.

After C.C. finished writing, Baganha told her to call her children and read her "confession" to them "because he wanted them to know what kind of mother they had." When she reached her son on the phone, C.C. started crying and began reading the "confession" from the tablet. Her son asked if she was okay and indicated she was "being crazy."

Her son indicated he had to hang up, and a few minutes later C.C.'s daughter called. The daughter stated her brother had called her and he was "calling the police. They're going to be there soon." C.C.'s daughter told her to keep reading from the tablet. "She goes the cops are on their way. The cops are on their way. Just keep reading it, mom."

C.C. was still on the phone with her daughter when the doorbell rang. Baganha went to the front door and told C.C. "don't make this hard on me 'cause I'll get even." C.C. was scared and just wanted to get to the door and let the officers inside. When the officers arrived, Baganha was arrested.

C.C. estimated the entire episode took place over about one hour to one and a half hours. As a result of Baganha's actions, she suffered scrapes to her face, a cut on her cheek, carpet burns on her skin, and her face was puffy and swollen afterwards.

On February 25, 2014, Baganha was charged in count 1 with willful infliction of corporal injury and in count 2 with criminal threats. Baganha pled not guilty. A jury was empaneled on April 29, 2014.

At trial, Baganha testified on his own behalf. He claimed C.C. became very angry when he accused her of sleeping with other men and she started swinging at him with her fists. Baganha claimed C.C. hit him three or four times before he was able to wrap his arms around her and calm her down. He claimed C.C. told him about a "swingers get-together" and he asked C.C. to write down everything she had just talked about.

On May 5, 2014, the jury found Baganha guilty as charged. The probation report noted Baganha was on misdemeanor probation when the incident occurred. The

3.

probation report recommended imposition of the low term for the count 1 offense. The probation report also stated "it appears the defendant's sole intent was to have [C.C.] admit to acts of infidelity" and concluded any term imposed for count 2 should be stayed pursuant to section 654.

The People filed a sentencing brief. In it, they argued Baganha harbored two separate intents when committing the two offenses, and section 654 did not apply. The People also asked the trial court to impose the aggravated term for the count 1 offense. Baganha filed a sentencing brief, arguing he should be granted felony probation with no prison term and that section 654 applied to stay imposition of any term for the count 2 offense.

The trial court at sentencing opined that Baganha's actions were "callous and disturbing." The trial court found Baganha "had ample time to reflect" and concluded section 654 did not apply. Consecutive terms were imposed for the counts; three years for the count 1 offense and a consecutive eight months, which is one-third the midterm, for the count 2 offense.

Baganha filed a notice of appeal on June 26, 2014.

## DISCUSSION

Baganha contends the trial court erred in imposing consecutive sentences and that section 654 applies. He is mistaken.

### *Standard of Review*

The defendant's intent and objective are factual questions for the trial court in a section 654 analysis. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) We review the trial court's factual findings in imposing multiple punishment for substantial evidence, that is, evidence which is reasonable, credible, and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [defining substantial evidence]; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.) We view the record in the light most favorable to the trial court's

4.

findings and presume the existence of every fact the trial court could reasonably deduce from the evidence.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

It is judicial action and not judicial reasoning that is the subject of appellate review.  (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1004.)  Regardless of the trial court's rationale for imposing consecutive sentences, we determine whether such action was legally correct.  (*Ibid.*)

### Section 654

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  "The purpose of section 654 is to ensure that a defendant's punishment is commensurate with his culpability and that he is not punished more than once for what is essentially one criminal act."  (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252.)

The section 654 prohibition against double punishment applies to a single act or to a course of conduct which constitutes an indivisible transaction.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209.)  "[I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct."  (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  In addition, if the defendant commits separate and distinct acts with the same objective and the acts were not incidental to another offense or the means by which another offense was committed, section 654 does not preclude separate punishment.  (*People v. Kwok*, *supra*, 63 Cal.App.4th at pp. 1252-1257.)

*Analysis*

Here, Baganha committed two distinct crimes—willful infliction of corporal injury and criminal threats. These crimes had distinct objectives; one to physically hurt the victim, the other to threaten her.

One need not inflict physical harm on a victim or engage in a course of conduct to commit a criminal threat; a criminal threat occurs from one discrete act. (*People v. Maciel* (2003) 113 Cal.App.4th 679, 682.) Baganha committed the count 2 criminal threat offense when he threatened to kill C.C. and put her body in the Kern River.

Baganha committed willful infliction of corporal injury when he repeatedly held C.C. down and placed a pillow over her face, causing her to have difficulty breathing and to suffer a cut and scrapes to her face. The threat was not a part of the infliction of physical injury. The People made this distinction in closing argument, noting the act constituting count 2 was designed to frighten and cause sustained fear; the course of conduct constituting count 1 was designed to inflict physical pain.

Baganha committed separate and distinct acts that were not the means by which another offense was committed, thus section 654 does not preclude separate punishment. (*People v. Kwok*, *supra*, 63 Cal.App.4th at pp. 1252-1257.)

**DISPOSITION**

The judgment is affirmed.

6.