Filed 12/17/25  P. v. Armstrong CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KHIRY LAMAR ARMSTRONG,<br><br>    Defendant and Appellant. | C100981<br><br>(Super. Ct. No. STK-CR-FE-2023-0011706) |

Defendant Khiry Lamar Amstrong got into a heated argument with J.F. in front of a smoke shop in Stockton.  At the urging of his girlfriend, J.F. walked away from the argument.  Defendant also walked away, but returned about two minutes later wearing a face mask and carrying a semiautomatic handgun, which he used to shoot J.F. once in the leg before leaving the scene.

A jury convicted defendant of assault with a semiautomatic firearm, possession of a firearm by a person with a felony conviction, and possession of ammunition by a person prohibited from possessing a firearm.  The jury also found that defendant used a firearm in the commission of the assault.  In a bifurcated proceeding, the trial court found that defendant had a prior strike conviction within the meaning of the three strikes law, which also subjected him to an additional five-year serious felony enhancement.  After dismissing the serious felony enhancement, the trial court sentenced defendant to an aggregate determinate term of 23 years four months in state prison.

Defendant now claims (1) we must reverse his conviction for assault with a semiautomatic firearm because the evidence does not support a finding that his gun was a semiautomatic firearm, (2) the trial court should have dismissed his firearm enhancement, and (3) the trial court violated Penal Code section 654[1] by separately punishing him for assault with a semiautomatic firearm and for being a felon in possession of that firearm.

We conclude (1) the evidence is sufficient to support the jury's finding that the gun defendant used was a semiautomatic firearm, (2) the trial court did not abuse its discretion in declining to dismiss the firearm enhancement, and (3) defendant's section 654 claim lacks merit.  We will affirm the judgment.

BACKGROUND

On the morning of August 18, 2023, J.F. and his girlfriend drove to a smoke shop in Stockton.  For about an hour, they talked to some people who were hanging out in front of the store.  When defendant pulled up to the store, he and J.F. started arguing. The girlfriend tried to get J.F. to walk away by telling him that whatever they were arguing about was "not that serious."  The argument, which was captured on surveillance

_____

[1] Undesignated statutory references are to the Penal Code.

video, lasted a few minutes and ended with defendant and J.F. walking away from each other.

J.F. and his girlfriend remained in the parking lot. The record does not reveal where defendant went, but the surveillance video shows him walking back up to J.F. about two minutes later while wearing a face mask and holding a semiautomatic pistol. The same argument "started all over again." Less than a minute later, defendant shot J.F. in the left thigh. Defendant got back in his car, a blue Buick LeSabre, and drove away. A single ".45 auto" shell casing was found at the scene. Defendant's home was searched, but the pistol defendant used to shoot J.F. was not found.

DISCUSSION

I

Defendant contends we must reverse his assault with a semiautomatic firearm conviction because the evidence is not sufficient to support a finding that his gun was a semiautomatic firearm.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

The crime of assault with a semiautomatic firearm requires proof that defendant "commit[ted] an assault on the person of another" and did so "with a semiautomatic firearm." (§ 245, subd. (b).) "A semiautomatic firearm 'fires once for each pull on the

3

trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' [Citation.]" (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4; see § 17140 [" 'semiautomatic pistol' means a pistol with an operating mode that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger"].)

Defendant does not dispute that shooting J.F. in the leg amounted to an assault. His challenge is whether he did so with a semiautomatic firearm. The following evidence supports the jury's finding.

Sergeant Edgar Rodriguez, an officer with over 10 years of service at the Stockton Police Department, had firearms training at least every two years and was also required to qualify with various firearms every three months. His service weapon was a semiautomatic pistol. Sergeant Rodriguez described the difference between a revolver and a semiautomatic pistol, including the fact that a semiautomatic pistol ejects the shell casing after firing a bullet and automatically chambers a new round if there is one in the magazine. He testified that based on his training and experience, and his review of a still image that was taken from the surveillance video, defendant's gun "appears to be a semiautomatic firearm." He added that his semiautomatic service pistol had "the same design with the slide on top" as the firearm depicted in the still image.

Detective Nicholas Fogal, a firearms instructor and member of the department's SWAT team, testified that his service weapon was also a semiautomatic pistol. He testified that when a semiautomatic pistol fires a round, the pressure generated by the explosive charge causes the slide to move backwards, ejecting the expended shell casing and automatically loading another round into the chamber. After distinguishing the design from that of a revolver, Detective Fogal testified that the gun depicted in the image taken from the surveillance video "appears to be a semiautomatic-style handgun." The detective further testified that the presence of an expended shell casing at the scene

4

of the shooting was consistent with his assessment that the gun was a semiautomatic firearm.

Defendant argues the foregoing evidence was insufficient because "there was no firearm that was shown to be capable of firing a projectile, ejecting a spent cartridge, and chambering another with a single trigger pull. Instead, the only evidence was that the firearm in a picture looked consistent with a semiautomatic firearm." But that will be the case whenever a defendant fires only one round and successfully disposes of the gun after doing so. In such a case, the evidence will involve eyewitness testimony or, as here, testimony that the gun depicted in a surveillance video appeared to be a semiautomatic firearm because of distinctive features of the weapon, such as the slide. Here, two experienced officers, both of whom were issued semiautomatic pistols for their service weapons, and one of whom was a firearms instructor, described the design of a semiautomatic firearm, including the capacity to automatically chamber a round, and testified that the gun depicted in images from the surveillance video appeared to be such a weapon. That conclusion was corroborated by the expended ".45 auto" shell casing found at the scene. The evidence was sufficient to support the conviction.

II

Defendant next claims the trial court abused its discretion in declining to dismiss his firearm enhancement.

A

Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to provide in subdivision (c): "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [several enumerated] mitigating circumstances . . . are present. Proof of the presence of one or more of these

5

circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (See *People v. Walker* (2024) 16 Cal.5th 1024, 1028 (*Walker*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295 (*Mendoza*).) As relevant to defendant's argument on appeal, section 1385, subdivision (c)(2) indicates that it is a mitigating circumstance when the application of an enhancement could result in a sentence of over 20 years. (§ 1385, subd. (c)(2)(C).)

As the California Supreme Court has recently clarified, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker, supra*, 16 Cal.5th at p. 1029.)

B

After the prior serious felony enhancement was dismissed, the trial court noted, "now there's only one enhancement," and went on to explain that section 1385, subdivision (c)(2) required it to "consider and afford great weight to evidence offered by the defendant to prove that any of the [statutorily enumerated] mitigating circumstances . . . are present." After accurately reciting the remainder of section 1385, subdivision (c)(2), the trial court listed each enumerated mitigating circumstance and stated that the only applicable circumstance was the following: "Application of the enhancement could result in a sentence of over 20 years." The trial court found "that

6

because of [defendant's] prior voluntary manslaughter conviction and conviction for assault with a semiautomatic firearm with a gun allegation in the current case, that there is a likelihood that dismissal would result in physical injury or other serious danger to others.  The Court does find that this would endanger public safety to strike the firearm allegation or sentence [defendant] to less than 20 years."

C

We review a trial court's determination that dismissal of an enhancement would endanger public safety for an abuse of discretion.  (*Mendoza, supra*, 88 Cal.App.5th at p. 298.)  Under this "highly deferential" standard (*ibid*.), " ' "we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious." ' [Citations.]" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 857.) " '[A]n abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' [Citations.]"  (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

Relying on *Gonzalez*, defendant argues the trial court improperly focused on "whether he was a danger to society in the past," as opposed to "whether [he] would present a danger to public safety if he were released from custody at the end of his sentence without the enhancement added."

In *Gonzalez*, the trial court "believed that it was required to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.' Premised on its understanding of the proper inquiry, the trial court imposed the firearm enhancement based on its conclusion that [the defendant] 'presently . . . does represent a danger to society.' " (*Gonzalez, supra*, 103 Cal.App.5th at p. 227.)  The appellate court concluded the trial court's "singular focus on whether the defendant *currently* poses a danger" amounted to an abuse of discretion.  (*Id*. at p. 228.)  The court explained that "section 1385, subdivision (c)(2) focuses on the danger associated with *the dismissal*

7

*of an enhancement*," not the defendant's current dangerousness. (*Ibid*., italics added.) The court continued: "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Ibid*.) Thus, the trial court should have employed " 'a forward-looking inquiry' " that not only accounted for the defendant's current dangerousness, but also considered "the date on which the defendant would be released under the revised sentence . . . ." (*Id*. at p. 229.)

Here, however, the record does not demonstrate that the trial court focused exclusively on defendant's current dangerousness. Instead, the trial court found, based on defendant's prior and current violent crimes, that dismissing the enhancement and sentencing him to "less than 20 years" would endanger public safety. We conclude the trial court properly looked to defendant's level of dangerousness at the time he would be released from custody if the enhancement were to be dismissed and did not rely solely on his current level of dangerousness. The trial court was not required to state reasons for declining to exercise its discretion under section 1385 (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637), and we must presume the trial court considered all relevant factors unless the record affirmatively demonstrates otherwise. (*Ibid*.) The trial court did not abuse its discretion.

### III

In addition, defendant argues the trial court violated section 654 by separately punishing him both for assault with a semiautomatic firearm and for being a felon in possession of that firearm.

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) Where "the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, [he] may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*Jones, supra*, 103 Cal.App.4th at p. 1143.)

*Jones* is instructive. There, the defendant, a convicted felon, fired several rounds at his ex-girlfriend's house from the passenger seat of a car as it slowly drove past the house. (*Jones, supra*, 103 Cal.App.4th at p. 1142.) After a jury convicted defendant of shooting at an inhabited dwelling and possession of a firearm by a convicted felon, the trial court separately punished him for each crime. (*Ibid*.) Rejecting his argument that this violated section 654, the appellate court determined "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary

9

crime already in possession of the firearm." (*Id*. at p. 1145.) The court explained that although "multiple punishment is improper where the evidence 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense . . . ' " (*id*. at p. 1144, quoting *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412), "it is clear that multiple punishment is proper where the evidence shows that the defendant possessed the firearm before the crime, with an independent intent." (*Jones,* at p. 1144.) " 'Commission of a crime under section [29800] is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon.' " (*Id*. at p. 1146.)

As in *Jones*, defendant was necessarily in possession of the firearm when he walked up to J.F. and shot him with it. He violated section 29800 the moment it was in his possession with the intent to possess it. He then used it to shoot J.F. with the separate intent to harm him. And contrary to defendant's argument on appeal, this case is nothing like *People v. Bradford* (1976) 17 Cal.3d 8, where the defendant, during a traffic stop, took the officer's gun and shot him with it. (*Id*. at p. 13.) *Bradford* is an example of the situation noted in *Jones*, where fortuitous events placed the gun in the defendant's hands at the moment of using it to commit another offense. Similarly, in *People v. Venegas* (1970) 10 Cal.App.3d 814, the defendant shot the victim at a bar, but there was no evidence that he brought the gun to the bar, as opposed to taking the victim's gun during a struggle moments before the shooting. (*Id*. at pp. 818-819, 821.) Unlike *Bradford* and *Venegas*, and like *Jones*, "the evidence was sufficient to allow the inference that [defendant's] possession of the firearm was antecedent to and separate from the primary offense of [assault with a semiautomatic firearm]." (*Jones, supra*, 103 Cal.App.4th at p. 1147.)

10

Additionally, "prohibiting multiple punishment under the circumstances presented here would not further the policies underlying sections 654 and [29800]. Section 654's purpose is to ensure that punishment is commensurate with a defendant's culpability." (*Jones, supra*, 103 Cal.App.4th at p. 1148.) However, " '[i]t is just as undesirable to apply the statute to lighten a just punishment as it is to ignore the statute and impose an oppressive sentence.' [Citation.] Section [29800] uniquely targets the threat posed by felons who possess firearms. [Citation.] We see no reason why a felon who chooses to arm himself or herself in violation of [that section] should escape punishment for that offense because he or she uses the firearm to commit a second offense." (*Ibid*.)

Defendant argues "[t]he error is compounded by the [trial] court's imposition of a consecutive four-year firearm-use enhancement . . . for count 1." However, a defendant who uses a firearm to commit an assault in violation of section 245 is "subject to additional punishment under section 12022.5, subdivision (a) . . . ." (*People v. Rodriguez* (2009) 47 Cal.4th 501, 505; see § 12022.5, subd. (d).) Defendant cites no case, and we have found none, holding that *Jones*'s reasoning does not apply where a firearm-use enhancement is added to the primary offense. Regardless of whether the enhancement is added, where a convicted felon brings a firearm to the scene of another crime, that possession is "antecedent to and separate from the primary offense" (*Jones, supra*, 103 Cal.App.4th at p. 1147), and also necessarily antecedent to and separate from his use of that firearm in the commission of the primary offense.

Moreover, it is immaterial that the trial court stayed punishment for the unlawful possession of ammunition. Although the record is silent on this point, punishment for that count may have been stayed because the possession of ammunition was done with the same intent and objective as the possession of the firearm. That has nothing to do with whether the possession of the firearm was committed with the same intent and objective as the assault with a semiautomatic firearm. As we have already explained, the answer to the latter question is no.

11

DISPOSITION

The judgment is affirmed.

                                                 /S/

                                       MAURO, Acting P. J.

We concur:

     /S/

DUARTE, J.

     /S/

WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.