Filed 4/20/16  P. v. Putnam CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074860 |
| v. | (Super. Ct. No. 62100613A) |
| STEPHEN EUGENE PUTNAM, | |
| Defendant and Appellant. | |

A jury found defendant Stephen Eugene Putnam guilty of pimping and pandering and the trial court sentenced him to seven years four months in prison.  The jury also convicted defendant's codefendant, Syla Debra Thongsy, of pimping and pandering, plus transporting a minor for the purpose of a lewd act.  (Pen. Code § 266j.)  In a separate appeal, this court recently affirmed Thongsy's conviction and upheld her sentence of nine years four months.  (*People v. Thongsy* (Aug. 14, 2015, C075112) [nonpub. opn.].)

Defendant now contends (1) the trial court erred in denying his motion to dismiss and there is insufficient evidence that defendant aided and abetted Thongsy in pimping and pandering; (2) the trial court erred in sentencing him to consecutive prison terms; and (3) the trial court abused its discretion and violated his constitutional rights by admitting into evidence a letter addressed to Thongsy.

1

Disagreeing with defendant's contentions, we will affirm the judgment and direct the trial court to correct the abstract of judgment.

BACKGROUND

In 2010, defendant lived in a residential neighborhood in Roseville that his neighbors described as "family-oriented," "desirable" and "quiet." Some of his neighbors testified that two or three years earlier, they had noticed a number of scantily-clad young women coming and going from defendant's home and numerous unfamiliar men arriving and leaving again within an hour. In response to neighbor complaints at that time, police located an Internet advertisement that ultimately led to an undercover operation confirming prostitution in defendant's home. A prostitute was apprehended. During the operation, police found defendant upstairs, viewing a prostitution advertisement on a laptop computer with a woman named Latasha. When an officer called the number on the advertisement, Latasha's nearby telephone rang. Defendant was charged with maintaining a house of prostitution in violation of Penal Code section 316 and his plea of no contest to that charge was admitted into evidence in the instant trial without objection.

Later in 2010, the neighbors noticed the pattern of vehicle traffic and young women had returned to their neighborhood. One neighbor thought as many as five or six women were living in defendant's house. Groups of women left defendant's house dressed in stilettos, very short skirts and small tops. They looked like they were going to work in a strip joint or as prostitutes.

Neighbors often saw Thongsy at defendant's house and driving defendant's vehicles. At the same time, a woman who described herself as a dancer was renting defendant's pool house; she said the high-traffic activities started at the house at about the time Thongsy arrived in the summer of 2010. The dancer saw Thongsy come to the house with two girls she later told police appeared to be about 15 and 17 years old.

2

The dancer sent defendant a text message telling him he needed to get the underage girls out of the house, but she saw the same girls continue to come and go.

The victims who testified at trial were girls aged 15 and 16 years old in the summer of 2010. They had been friends since seventh or eighth grade. The older victim had been in and out of foster care because her mother had died and her father was in jail. The younger victim had also been in and out of foster care because her parents were on drugs.

The older victim met Thongsy at a mall after she ran away from home and needed a place to stay. Thongsy picked her up at a park and took her to the home of Thongsy's mother. In addition to shelter, Thongsy gave the older victim money for food, clothes and personal hygiene items. Thongsy later took the older victim to defendant's house and introduced defendant as Thongsy's boyfriend.

The victims had been maintaining contact through social media and the older one told the younger one she had run away but had found a friend who supplied food, clothes and a safe place to stay. The younger victim testified that the older victim claimed to be living with a "pretty lady" or "porn star" who bought her all kinds of things and took her places. One night, the younger victim got in trouble and did not want to go back home, so she contacted the older victim for help. The younger victim had no money, no toiletries and only the clothes she was wearing. Thongsy and the older victim went to pick up the younger victim in a silver or grey Altima. Thongsy took the victims to a store and bought them underwear and toiletries. They used the same car for a trip to Oakland. The car was registered to defendant.

Thongsy took the girls to defendant's house and then to a Motel 6 where Thongsy rented a room for them. At trial, a motel employee recognized Thongsy as a frequent customer and authenticated room receipts in her name. Thongsy told the girls they could not continue "living off her for free." It was clear that staying with Thongsy meant becoming a prostitute. The Motel 6 was on what the older victim called the "ho strip"

3

because of its reputation for prostitution. Buttressed by the drugs and alcohol supplied by Thongsy, the victims walked the street, taking men back to the motel room to engage in sexual intercourse for money. Thongsy told them $100 was the minimum price they should charge for sex and she warned them to have customers touch them first because an undercover police officer cannot touch a prostitute. Thongsy supplied condoms. The older victim said she gave Thongsy some of her earnings. The younger victim said she gave Thongsy all of her earnings.

The older victim took provocative pictures of herself and the younger victim in defendant's bathroom for a portfolio Thongsy was creating. The younger victim said defendant gave her money to buy underwear at Victoria's Secret so she could have a "photo shoot" at defendant's house. She said defendant advised her she would do better advertising on the Internet than "walking the track" (a place where street prostitution occurs, often near motels). The older victim said Thongsy gave her the same advice. An expert regarding the commercial sexual exploitation of children (juvenile prostitution) testified at trial that Internet prostitution is much more lucrative than street prostitution.

The jury found defendant guilty of pimping the younger victim, a minor under 16 years of age (Pen. Code, § 266h, subd. (b)(2) -- count three); pandering in connection with the younger victim (Pen. Code, § 266i, subd. (b)(2) -- count four); pimping the older victim, a minor 16 years of age or older (Pen. Code, § 266h, subd. (a) -- count five); and pandering in connection with the older victim (Pen. Code, § 266i, subd. (a)(2) -- count six). The jury found defendant not guilty on counts one, two, eight, nine, ten and eleven.

In sentencing defendant, the trial court concluded defendant was a danger to children from disadvantaged neighborhoods and that he had actively aided and abetted Thongsy's pimping and pandering by enticing vulnerable children from a "very rough lifestyle" with his large home and "middle- to upper-class" lifestyle. Considering the aggravating and mitigating factors, the trial court sentenced defendant to an aggregate prison term of seven years four months as follows: the middle term of six years on the

4

count three charge of pimping (designated the principal offense); the middle term of six years on the count four charge of pandering, stayed pursuant to Penal Code section 654; a consecutive one third the mid-term of one year four months on the count five charge of pimping; and the middle term of four years on the count six charge of pandering, stayed pursuant to Penal Code section 654.

## DISCUSSION

### I

Defendant contends the trial court should have dismissed the charges against him before jury deliberations because the prosecution's evidence against his codefendant was insufficient to support convictions against either of them for pimping and pandering. Defendant's arguments presume liability against him was derivative, although the prosecution also argued it had proven direct liability for pandering.

The trial court denied a joint defense motion for acquittal. Defendant contends that even if the motion was properly denied, there was insufficient evidence to support the verdict because the defense established (1) the younger victim was once observed wearing sexy lingerie while chatting with men on the Internet; (2) she saw her boyfriend but did not tell him she wanted to leave; and (3) defendant was out of town for three days while the victims were in Thongsy's company.

In determining whether evidence is sufficient to support the denial of a motion to dismiss or to sustain a conviction, appellate courts do not independently adduce the facts from the evidence; instead, we must look at the whole record, presuming in support of the judgment every fact that the jury could have reasonably deduced. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182-1183.) We turn to the evidence supporting each of the crimes for which defendant was convicted.

### A

To pander is to cause, induce, persuade or encourage another person to become a prostitute by "promises, threats, violence, or by any device or scheme." (Pen. Code,

5

§ 266i, subd. (a)(2).)  Citing *People v. Beeman* (1984) 35 Cal.3d 547 (*Beeman*), defendant argues that aiding and abetting liability requires a defendant's actual knowledge of the principal's intent but in this case the prosecution did not prove he knew what happened before Thongsy introduced him to the victims.  We assume defendant's point is that Thongsy must have persuaded the victims to become prostitutes before he met them.  But if a panderer persuades someone to engage in continuing acts of prostitution, it is a continuing crime.  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 490.)  And when a crime continues, the intent of one who aids and abets it can be formed at any time before all the elements constituting the offense have ceased.  (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164-1165.)  Accordingly, the fact that the victims had been with Thongsy a few days before defendant met them is of no consequence.

A juvenile prostitution expert testified that underage girls involved in prostitution are usually runaways looking for somebody to take care of them and treat them as family. The expert described a grooming process in which juveniles are a rich target because they cannot drive, do not have the ability to get jobs and cannot take care of themselves; the pimps first provide them with food and housing and then later tell them they need to repay the favors by engaging in prostitution.  Many pimps also provide drugs and alcohol to lower inhibitions or as rewards.  The expert said he had never met a juvenile prostitute who worked independently of pimps.  The jury arguably might have concluded Thongsy was the pimp and defendant was just trying to be helpful when he suggested Internet advertising for prostitution in lieu of "walking the track."  But knowingly helping with advertisements for prostitution is sufficient to support a conviction for aiding and abetting pandering.  (*People v. Leonard, supra,* 228 Cal.App.4th at p. 491.)

As we have recounted, the victims were young runaways who received care from Thongsy and then were told they would need to engage in prostitution to stay on.  At sentencing, the trial court concluded that staying in defendant's home and being driven in his car was part of the inducement for the victims to believe they could attain a better

6

lifestyle by cooperating with Thongsy. The younger victim said she feared both defendants. There was significantly more evidence adduced at trial, including extensive telephone records demonstrating defendant's active role in the prostitution business with Thongsy and other prostitutes, but the cited testimony was sufficient to support defendant's conviction for pandering. The defense evidence apparently did not persuade the jurors.

B

The jury also convicted defendant of pimping minors. That crime is defined as follows: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution . . . when the prostitute is a minor, is guilty of pimping a minor . . . ." (Pen. Code, § 266h, subd. (b).) The amount of money a pimp receives from the prostitute is irrelevant and it is not a defense that the defendant had sufficient income from other sources. (*People v. Jackson* (1980) 114 Cal.App.3d 207, 210.)

Defendant contends there was no direct evidence that he knew when he met the victims that Thongsy intended to obtain support or maintenance from their acts of prostitution. At the close of the prosecution's case, he argued there was no evidence he knew Thongsy took money from the victims. Minimizing the prosecution evidence, defendant again insists there was no proof he had "direct first-hand knowledge" of Thongsy's intent for the victims. He argues that Thongsy's conduct appeared to him to be more consistent with someone who was prostituting herself than with someone who was pimping or pandering others.

*Beeman* established that an aider and abettor must share the specific intent of the perpetrator, meaning he "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Beeman, supra,* 35 Cal.3d at p. 560.) We do not read this

7

requirement as defendant does, requiring direct proof that the aider and abetter directly observed every element of the crime as it unfolded.

Both victims accepted money for sex in a motel room rented by Thongsy and then gave Thongsy some or all of their earnings. This was sufficient to prove pimping by Thongsy. (See *People v. Jackson, supra*, 114 Cal.App.3d 207, 209-210 [money given by victim to defendant for single act of prostitution was sufficient to prove pimping].) But there was more. The younger victim testified that she spent most of her time with Thongsy either in Oakland or at defendant's house. She said defendant made sexual advances to her while she was at his house and Thongsy was away; communicating by text message, Thongsy refused defendant permission to have intercourse with the victim, but the victim twice gave him "hand jobs" instead. A reasonable juror could conclude that this conduct acknowledged and supported Thongsy's role as pimp.

Defendant also told the younger victim she would make more money advertising on the Internet, then he gave her money to buy lingerie for a photo shoot at his house. By that time, the older victim had left and the younger victim had overheard Thongsy "putting a hit out" on her, so she was frightened. Instead of doing the photo shoot, she had a relative pick her up and take her to her mother. The victim told detectives a Playboy photographer was at the house with the defendants when she left. A reasonable juror could have concluded from this and other evidence at trial that defendant had expertise in the prostitution business and that, even if he was not a pimp, he intended to help Thongsy improve her income from pimping the victims by actively encouraging and facilitating provocative photography for Internet advertising. Defendant proffered no other motive for helping teenagers he barely knew become successful as prostitutes.

There was substantial evidence to support the pimping conviction.

## II

Defendant next contends the trial court erred in sentencing him to consecutive prison terms.

8

The trial court imposed the middle term of six years on the count three charge of pimping the younger victim plus a consecutive one-third the mid-term of one year four months on the count five charge of pimping the older victim. Pursuant to Penal Code section 654, the trial court imposed but stayed execution of additional sentences for pandering. Defendant contends the trial court should have ordered all the sentences to run concurrently pursuant to California Rule of Court, rule 4.425 because there was no evidence he had a separate intent or knowledge with respect to the individual victims and also because the victims spent very little time at defendant's house and, on one occasion when they were there, he was out of town.

California Rule of Court, rule 4.425 requires a court to impose a sentence on every count for which a defendant is convicted but to stay execution as necessary to implement Penal Code section 654. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1472.) To implement Penal code section 654, a trial court must determine the defendant's objective and intent. (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) "If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Ibid*.)

Whether a defendant entertained multiple criminal objectives is a fact question committed to the broad discretion of the trial court and its findings will not be reversed if there is any substantial evidence to support them. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) In a substantial evidence review, we assess the trial court's factual conclusions in the light most favorable to the judgment and we presume the existence of every fact the trial court could reasonably deduce from the evidence. (*Ibid*.)

In this case, defendant's objective to gain financial support from pimping and pandering may have been singular as he contends, but the trial court imposed consecutive

9

terms because there were two victims. Separate punishments are proper when a course of conduct results in crimes against separate victims. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248.) Moreover, any circumstance in aggravation or mitigation may be considered in deciding whether to impose consecutive sentences. (Cal. Rules of Court, rule 4.425(b).) Being on probation when a crime is committed is an aggravating factor. (Cal. Rules of Court, rule 4.421(b)(4).) The trial court found that defendant was on probation for a crime involving prostitution.

Carrying out a crime in a way that indicates planning, sophistication or professionalism is also an aggravating factor relevant to sentencing. (Cal. Rules of Court, rule 4.421(a)(8).) Committing a crime against a particularly vulnerable victim is another. (Cal. Rules of Court, rule 4.421(a)(3).) The trial court's observation that defendant enticed children from disadvantaged backgrounds by allowing them to share in his more affluent lifestyle suggests it applied one or both of these additional factors, each of which was supported by facts recounted *ante*. (See *People v. Mathews* (1980) 102 Cal.App.3d 704, 710 [sophistication and professionalism are imprecise terms that appear calculated to invest trial courts with a considerable latitude in sentencing discretion].) Defendant's contention lacks merit.

### III

Defendant contends the trial court abused its discretion and violated his constitutional rights by admitting into evidence what was marked as exhibit 52, a letter addressed to Thongsy.

Police discovered the handwritten letter in a black bag inside the vehicle Thongsy was in when she was apprehended. The author asked whether "Lala" had any kind of work the author could do to earn some money. Thongsy's nickname was "Lala." The letter, dated July 21, 2010, stated:

"Hello Baby Girl, [¶] I hope all is well with you. I wrote you in county but the letter came back. I miss you so much LALA. I hope and pray you are doing good. Ill be

10

[out] September 3rd.  Im almost out of here just 43 more days.  I cant wait to see you!  I hope that we can hook-up like we talked about.  Write to me.  I get a letter from my mom she's not that mad any more and she is sending me my parole box.  So Im happy for that.  LaLa if you have any kind of work that I can do let me know "K" As I need to make some $.  I will be lucky to get home and buy dinner when I get out.  [¶]  Well little one write to me "K" I have alot of love for you.  This place has changed so much.  I hate it here now.  I pray I never come back to this place.  Its almost program time so Ive got to go for now."

Defendant suggests the prosecution did not lay a proper foundation for the letter, but he cites no evidence that he objected on that ground.  We will not consider a new objection on appeal.  (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.)  Defendant also argues the letter was inadmissible hearsay and that it was irrelevant because it did not name defendant or the victims.  He also contends it was highly prejudicial because it showed Thongsy was at some point in custody and that prejudiced defendant because his liability was derivative of hers.  We disagree.

The trial court concluded the letter was circumstantial non-hearsay evidence that Thongsy "may have been operating with others in the pimping or pandering, procuring, or soliciting [of] prostitutes to work for her."  Expressly rejecting the defense contention that the letter was unduly prejudicial, the trial court mentioned that it had earlier excluded less relevant evidence under Evidence Code section 352.  Defendant contends the trial court's ruling was clouded by its reference to the excluded evidence.  But the issue was fully briefed and argued and the trial court's comment about other evidence merely explained distinctions among its rulings.  Defendant provides neither argument nor authority for his assignment of error, so we reject it.  (See *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [argument forfeited on appeal if not supported by analysis and authority].)

11

We review rulings on the admissibility of evidence for abuse of discretion, including the hearsay nature of proffered evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) We will not disturb an evidentiary ruling unless we conclude it was arbitrary, capricious or patently absurd and that it resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Hearsay is evidence of an out-of-court statement that is offered to prove the truth of the matter asserted. (Evid. Code § 1200, subd. (a).) An out-of-court statement of a nonparty is admissible if it is offered for a non-hearsay purpose and that purpose is relevant to an issue in dispute. (*People v. Davis* (2005) 36 Cal.4th 510, 535-536.) The letter was not offered to prove that the author was looking for work, but rather that the recipient was not just generously helping young runaways in the summer of 2010, but was actively working as a pimp. The letter was relevant and admissible. Defendant was free to argue that it did not mention him or the victims and that it did not prove what the prosecution suggested.

Defendant also contends the letter should not have been admitted because it was so prejudicial. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create a substantial danger of undue prejudice. . . ." (Evid. Code § 352.) This means evidence should be excluded if it poses an intolerable risk to the fairness of the proceedings or reliability of the outcome. (*People v. Dement* (2011) 53 Cal.4th 1, 36.)

Defendant argues the jurors could have inferred that Thongsy received the letter while she was incarcerated. But defendant does not explain why a reasonable juror would reach that conclusion or why such an inference would outweigh the probative value of the letter. Similarly, although defendant argues the court's reference to having excluded other items of evidence "bespeaks an abuse of discretion," he offers no explanation and no citation to relevant authority. In conclusion, defendant further contends admitting the letter into evidence violated his right to due process but, again,

12

he offers only a brief and bald assertion that his rights were violated. We decline to address any of these unsupported arguments. (See *People v. Harper*, *supra*, 82 Cal.App.4th at 1419, fn. 4 [argument forfeited on appeal if not supported by analysis and authority].) The trial court did not abuse its discretion in admitting the letter into evidence.

## IV

In our review we have identified a discrepancy between the trial court's sentencing orders and the abstract of judgment. Although this issue was not raised by the parties, because the law appears clear we will order correction of the abstract without further briefing in the interest of judicial economy. Any party aggrieved may petition for rehearing. (Gov. Code, § 68081.)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect that defendant was convicted on count three of violating Penal Code section 266h, subdivision (b)(2), pimping a minor, and that defendant was convicted on count four of violating Penal Code section 266i, subdivision (b)(2), pandering with a minor. The trial court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

/S/
Mauro, Acting P. J.

We concur:


/S/
Murray, J.


/S/
Hoch, J.

13