Filed 8/30/23  P. v. Aguilar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERT JAVIER AGUILAR,<br><br>    Defendant and Appellant. | G061827<br><br>(Super. Ct. No. 17CF2394)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Albert Javier Aguilar was sentenced to seven years and four months in prison based on convictions for assault with a firearm and possession of a firearm by a felon. He appeals his sentence. First, he argues his sentence for possession of a firearm by a felon must be stayed under Penal Code section 654.[1] Second, he asserts his sentence is unconstitutional when compared to his codefendant, who received a shorter sentence. Third, he contends the trial court erred by selecting the middle term instead of the lower term when sentencing him for assault with a firearm. We find no error in the court's sentence and affirm the judgment.

I

FACTS AND PROCEDURAL HISTORY

The following facts are taken from our prior unpublished opinion, *People v. Aguilar* (June 10, 2022, G057314) [nonpub. opn.] (*Aguilar*), and the appellate record.

"A. Villegas (not the man's full name) was drinking with a friend one night at a bar. Villegas became uncomfortable because he thought that a man in the bar—later identified as Aguilar—was looking at him. Soon after, Villegas was approached by another man who told him someone outside was breaking into his pickup truck.

"Villegas went outside to the parking lot where he saw a man—later identified as Daniel Perez—sitting in the driver's seat of his truck.[2] Villegas also noticed a rear window in the truck had been broken. Villegas got into the passenger side of the truck; Perez got out and went toward the back of the truck. Villegas then moved over to the driver's side.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] "Perez and Aguilar were originally charged together, but Perez's case was severed prior to trial . . . ." (*Aguilar*, *supra*, G057314.)

2

"Before Villegas could start up his truck, Perez fired two gunshots, one striking the rear windshield and the other an adjacent cab panel. Villegas heard 'thunder sounds' from the gun and felt 'heat' behind his head. Villegas did not immediately realize the noise was from a gunshot. Villegas got out of the truck and saw Perez holding a revolver. Villegas saw the man who had been in the bar (Aguilar) standing near the front of his truck. Villegas had not seen Aguilar in the parking lot until after he got out of the truck. Aguilar was holding a semiautomatic handgun.

"Aguilar approached Villegas and they began to fight. Villegas took Aguilar's gun from him and hit him in the head with it (Villegas could not remember what ultimately happened to Aguilar's gun). During the fight, Villegas was able to push Aguilar's head to the ground. During the fight, Perez came up from behind Villegas and began pistol-whipping him. Perez twisted Villegas's head, tried to choke him, and bit Villegas on the shoulder, leaving a bite mark. Despite Perez's efforts, Villegas 'never stopped beating the other one [(Aguilar)] up.'

"The fight ended when someone yelled the police were coming. Villegas saw Perez and Aguilar get into a car and drive off together." (*Aguilar*, *supra*, G057314.) After the fight, Villegas realized he was missing his gold chain necklace. (*Ibid*.)

A "jury found Aguilar guilty of attempted murder and assault with a firearm (under a natural and probable consequences theory). The jury also found Aguilar guilty of robbery (the gold chain necklace), and illegal possession of a firearm by a felon." (*Aguilar*, *supra*, G057314.) The court found true allegations that Aguilar had a prior "strike" conviction under sections 667, subdivision (d), and 1170.12, subdivision (b), which also qualified as a prior serious felony under section 667, subdivision (a)(1). The court sentenced Aguilar to 13 years and four months in prison.

Aguilar appealed his convictions for attempted murder, assault with a firearm, and robbery, which we addressed in our prior opinion. We reversed Aguilar's conviction for attempted murder based on Penal Code amendments that invalidated the

3

natural and probable consequences theory of attempted murder. We also reversed the robbery conviction for lack of evidence but affirmed the conviction for assault with a firearm. We remanded the matter for resentencing. (*Aguilar*, *supra*, G057314.)

The court resentenced Aguilar to a total term of seven years and four months in prison. The sentence was comprised of (1) six years for the principal count of assault with a firearm, which was calculated using the middle term of three years and doubling it based on Aguilar's strike prior; and (2) a consecutive term of 16 months for possession of a firearm by a felon, which was calculated by taking one-third of the two-year middle term, i.e., eight months, and then doubling that amount due to the strike prior.

Aguilar challenges the court's sentence on multiple grounds.

II

DISCUSSION

A. *Section 654*

Aguilar contends his convictions for assault with a firearm and possession of a firearm by a felon arose from a single act or course of conduct. Thus, he cannot be punished for both these offenses under section 654. We disagree.

Under section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." The statute "'"precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts."'" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1142-1143 (*Jones*).)

Here, the trial court found section 654 did not apply because the conviction for possession of a firearm by a felon was a separate act that did not involve the assault. We review this ruling under the substantial evidence standard. (*Jones*, *supra*, 103

4

Cal.App.4th at p. 1143.) Under this standard, "'[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citation.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding.'" (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.)

Possession of a firearm by a felon "is a relatively simple crime to commit: an ex-felon who owns, possesses, or has custody or control of a firearm commits a felony. Implicitly, the crime is committed the instant the felon in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410, italics omitted.) Whether possession of a firearm by a felon """"constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.""" (*Jones*, *supra*, 103 Cal.App.4th at p. 1143.)

"It is clear that multiple punishment is improper where the evidence 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense . . . .'" (*Jones*, *supra*, 103 Cal.App.4th at p. 1144.) "On the other hand, it is clear that multiple punishment is proper where the evidence shows that the defendant possessed the firearm before the crime, with an independent intent." (*Ibid.*)

Aguilar maintains the record only shows he pointed a gun at Villegas after Villegas exited his truck, which forms the basis of his assault conviction. He claims there is no evidence he possessed the gun prior to this incident. However, the court could

5

reasonably infer he possessed the firearm prior to and separate from committing the assault.

In *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378 (*Ortiz*), the defendant challenged his conviction for possession of a firearm by a felon on grounds there was no evidence he possessed a firearm either prior to or while committing a kidnapping during a carjacking. But the appellate court found possession could be reasonably inferred. "The direct evidence showed [a codefendant] threw his gun out of the [car's] window and two guns were later found along the pursuit route. The trial court could reasonably infer that one of the two guns was [the defendant's]." (*Id*. a pp. 1378-1379.) The appellate court also found it could be reasonably inferred that the defendant possessed the gun prior to committing the kidnapping. (*Ibid*.) It explained, "[t]here [was] no evidence showing that fortuitous circumstances placed the firearm in [the defendant's] hand only at the instant of the beginning of the kidnapping during a carjacking." (*Id*. at p. 1379.)

The inferences required in this case are far less attenuated than in *Ortiz*, where there was no direct evidence that the defendant had even used a firearm during the commission of the kidnapping. (*Ortiz*, *supra*, 208 Cal.App.4th at pp. 1378-1379.) In *Ortiz*, the court had to infer the defendant used in the kidnapping one of the guns found along the pursuit route and that he possessed the gun with separate intent prior to committing the kidnapping. (*Ibid*.) Here, Villegas saw Aguilar holding the firearm. And, like *Ortiz*, nothing in the record shows Aguilar obtained the firearm simultaneous to committing the assault. Thus, based on the evidence, the trial court could reasonably infer that Aguilar possessed the firearm prior to the assault. Likewise, it could infer Aguilar's intent to possess the firearm was separate from his intent to commit the assault. Thus, there is sufficient evidence supporting the court's finding that section 654 is inapplicable.

6

*B. Constitutionality of Sentence*

Next, Aguilar contends his sentence is unconstitutional because it is disproportionate to Perez's sentence. Aguilar asserts Perez was far more culpable, yet Perez was only sentenced to five years while Aguilar was sentenced to seven years and four months.

Aguilar cites no authority for the proposition that a sentence can be ruled unconstitutional because a codefendant was given a shorter sentence. And even if such an analysis were legally proper, we have no means of comparing the sentences of Aguilar and Perez. We have not been cited anything in the record showing Perez's actual sentence. Aguilar only cites an oral statement by his counsel that Perez was given a five-year sentence. But nothing in the record corroborates this statement. Further, nothing in the record shows how Perez's sentence was calculated. As Aguilar admits, "the facts concerning Perez's criminal history and rehabilitation were not before the court." Aguilar's sentence was lengthened due to his strike priors, but it is unclear whether Perez had a criminal record. Nor do we know what other considerations the court made when issuing Perez's sentence.

*C. Sentence for Assault with a Firearm*

The court selected the middle term of three years when sentencing Aguilar for assault with a firearm. (See § 245, subd. (a)(2).) Aguilar asserts that under section 1170, subdivision (b)(6)(A), the court should have selected the lower term of two years because he was 25 years old at the time of the offense and had experienced trauma.[3]

Prior to 2022, former section 1170 gave the trial court broad discretion to impose the lower, middle, or upper term based on which term "'best serve[d] the interests

---

[3] Based on the briefs, it appears Aguilar is already on parole. But both sides agree this argument is not moot because resentencing could affect his parole termination date. (See *In re Vargas* (1985) 172 Cal.App.3d 316, 320, fn. 4.)

of justice.'"  (Former § 1170, subd. (b), Stats. 2020, ch. 29, § 15, eff. Aug. 6, 2020; *People v. Lopez* (2022) 78 Cal.App.5th 459, 464.)  This discretion was curtailed on January 1, 2022, when section 1170 was amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3).  Following the amendment, the middle term became "the presumptive sentence for a term of imprisonment unless certain circumstances exist."  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.)

Senate Bill No. 567 also added subdivision (b)(6) to section 1170.  (*People v. Flores*, *supra*, 73 Cal.App.5th at pp. 1038-1039.)  This subdivision provides, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following *was a contributing factor in the commission of the offense*:"  (1) the offender has experienced certain types of trauma, (2) the offender was under the age of 26 when the offense was committed, or (3) the offender is or was a victim of domestic violence of human trafficking.  (§ 1170, subd. (b)(6), italics added.)

Generally, Aguilar claims that due to his minimal participation in the incident, the aggravating factors did not outweigh his youth and history of trauma.  We are not persuaded.

The lower term presumption only applies if Aguilar's youth and/or trauma contributed to the commission of the offense.  (§ 1170, subd. (b)(6); *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991-992; *People v. Hilburn* (2023) 93 Cal.App.5th 189, 202.)  Aguilar had the burden of making this initial showing. (*Fredrickson*, at pp. 991-994.)  He did not meet it.  Though Aguilar's resentencing hearing occurred nine months after the amendments to section 1170 went into effect, he failed to make any showing as to how his age or past trauma contributed to the offense. Neither his sentencing brief nor his argument at the hearing even mention his age or past trauma.  As such, the court did not err by failing to apply the lower term presumption.

8

### III

### DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.