Filed 12/30/24  P. v. Anderson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099751 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE013202) |
| v. | |
| RASHAWN MAURICE ANDERSON, | |
| Defendant and Appellant. | |

After a jury found defendant Rashawn Maurice Anderson guilty of first degree murder and unlawful possession of a firearm, the trial court sentenced him to prison for 50 years to life plus three years.  On appeal, defendant contends:  (1) there was insufficient evidence the killing was premeditated and deliberate; (2) his trial counsel was ineffective for failing to raise certain mitigating circumstances and legal arguments at sentencing; and (3) the trial court erred by not staying the sentence for the possession offense under Penal Code section 654.  (Undesignated statutory references are to the Penal Code.)  Finding no merit to these contentions, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2022, the People charged defendant with murder and being a felon in possession of a firearm. As to the murder, the People alleged defendant used a firearm and intentionally and personally discharged a firearm causing great bodily injury or death.

At trial, the People introduced evidence that on August 2, 2022, defendant and the victim, Janiah Johnson, arrived together by car at the gas station where Johnson worked. Johnson went inside the gas station's convenience store to start her shift while defendant stood outside with the car. Defendant did not have a mask on when he first arrived but put one on soon after. Defendant approached the store several times. At some point, Johnson locked the door while she was inside.

Johnson eventually opened the door to allow a customer inside. When she did so, defendant retrieved a semiautomatic gun with an extended magazine from the car and fired multiple shots while walking toward Johnson. Johnson fell to the ground; defendant stood over her and fired several more shots. Defendant walked back and forth between Johnson and the car several times before entering the store to pick up a shell casing. Defendant then returned to the car with the gun and drove away. Johnson died at the scene. The customer testified that Johnson and defendant were arguing in the moments before the shooting. An officer testified that a shooter using a semiautomatic gun would need to release the trigger and pull it again for each shot fired.

Defendant fled to Chicago, where he was eventually apprehended. When interviewed about the incident, defendant admitted to shooting Johnson and to kicking her in the head. Investigators recovered 16 shell casings from the scene and 2 more shell casings from the recovered car. The gun was never found. An autopsy determined that Johnson's body had 16 gunshot entry wounds, all in the torso area.

The People introduced evidence establishing that defendant had previously been convicted of domestic violence against Johnson. In summation, the prosecutor argued the

2

jury could consider that defendant "had a propensity to commit domestic violence based on his prior conviction."

The jury found defendant guilty of first degree murder and being a felon in possession of a firearm, and found true that defendant personally and intentionally discharged a firearm causing death. The only theory of first degree murder that the jury was instructed on was that of a willful, deliberate, and premeditated killing.

Prior to sentencing, defense counsel prepared a mitigation statement for use in a future youth offender parole hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. A private investigator drafted the statement based on interviews the investigator conducted with defendant and his family members. According to the summary of defendant's interview, defendant claimed: (1) he felt unloved by his mother, who was frequently intoxicated, and believed that "their poor relationship directly affected how he treated women"; (2) he got along well with his father, though his father hit him; (3) his mother "was never the disciplinarian" and he "didn't consider himself to have been physically abused by his father and he was never subject to sexual abuse"; (4) he always had food and clothing while growing up; and (5) he was "extremely remorseful." In contrast, defendant's brother told the investigator that he and his siblings were abused in the household, primarily by their mother. Defendant's brother also stated that defendant witnessed him being shot in a drive-by shooting. Defendant's grandmother told the investigator she did not believe defendant "was ever abused either physically or mentally by his parents." Defendant's sister told the investigator that "there wasn't any physical abuse directed toward the children" and that she believed defendant was immature and depressed.

The probation department's presentence report stated that "defendant believes he suffers from depression and anxiety, and he admitted he has anger issues. When the defendant was 15 or 16 years old, he witnessed his older brother being shot. The defendant stated he had flashbacks and believes he has Post Traumatic Stress Disorder."

The report also stated that defendant did not get along well with his mother. Defendant declined to make a statement regarding the murder for the probation report. The report found that the following aggravating circumstances applied: (1) the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1); undesignated rule references are to the California Rules of Court); (2) defendant engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); (3) defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); (4) defendant was on probation at the time of the offense (rule 4.421(b)(4)); and (5) defendant's prior performance on probation was unsatisfactory (rule 4.421(b)(5)). In mitigation, the report stated the defendant was under 26 years of age (rule 4.423(b)(6)).

At the sentencing hearing, defense counsel submitted the *Franklin* mitigation statement. Defense counsel argued the court should exercise its discretion not to impose punishment for the firearm enhancement and that the punishment for the firearm possession should be stayed. The prosecution asked the court for the maximum sentence, arguing that defendant "left her there to die, choking on her own blood. He left her there and walked away. But he stopped, he turned around. . . . [¶] And perhaps to me what is one of the most telling components of the trial, completely unbelievable how one person could do this to another person, he walked back to her, and he kicked her in the head. She had been shot 16 times and that was his reaction. It's just mind[-]blowing that one person can be that evil." Defendant declined to address the court.

The trial court ultimately sentenced defendant to 25 years to life for the murder, 25 years to life for the firearm enhancement, and three years (the upper term) for the firearm possession. The court stated "[t]his is certainly one of the most callous cases that have come before this Court," noting that defendant "doesn't care" about forgiveness as "[h]e is clearly a very callous individual." The court told the victim's family, "I assure you that

4

he will be held accountable by the law to the extent that it is possible to do so." In declining to strike or reduce the punishment for the firearm enhancement, the court stated that "[n]either the facts of the crime, nor the Defendant's prior record warrant a reduction in this case." As to the firearm possession, the court selected the upper term "pursuant to Rule 4.421(b)(4) and (5), as the Defendant's performance on his current grant of probation has been poor, as well as the other factors in aggravation found on page 8 of the probation officer's report."

Defendant timely appealed.

DISCUSSION

I

Defendant first argues there was insufficient evidence of premeditation and deliberation to support the jury's first degree murder conviction. We disagree.

When considering a claim of insufficient evidence, we review " ' "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) We " ' "must view the evidence in the light most favorable to the People and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Virgo* (2013) 222 Cal.App.4th 788, 797.) Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support" ' " the verdict. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

" 'In the context of first degree murder, " 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.' " ' " (*People v. Smith* (2018) 4 Cal.5th 1134, 1164.) Thus, "[a]n intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought

5

and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) But the " ' "true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88.)

In *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, our Supreme Court identified three categories of evidence that are typically sufficient to sustain a finding of premeditation and deliberation: (1) planning evidence; (2) motive evidence; and (3) a manner of killing from which the jury could reasonably infer a deliberate intent to kill. These factors need not be present in "some special combination" or "accorded a particular weight" (*People v. Pride* (1992) 3 Cal.4th 195, 247), and "it is not essential that there be evidence of each category to sustain a conviction" (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 887; see also *People v. Whisenhunt* (2008) 44 Cal.4th 174, 202 ["[T]he *Anderson* factors are simply an aid for the reviewing court, and an '[u]nreflective reliance' on *People v. Anderson* is inappropriate"]). That said, "[w]hen the record discloses evidence in all three categories, the verdict generally will be sustained." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.)

Here, evidence of all three *Anderson* factors is present. As to planning, the evidence shows that defendant's gun was in the car he arrived in, defendant knew the gun was there, and defendant put on a mask after arriving at the gas station. From this, a jury could reasonably infer that defendant brought the gun with him because he planned to kill Johnson and that he put on the mask to conceal his identity. Regarding motive, the jury learned how defendant had previously been convicted of domestic violence against Johnson and could have reasonably inferred he killed her in retaliation for her role in that conviction or that he had a propensity to commit domestic violence. And as to the manner of killing, defendant put on his mask and waited by his car until Johnson stepped outside to open the door for a customer. He then retrieved his gun, which was equipped

6

with an extended magazine, and fired 18 times at Johnson—initially from a distance and then several more times while he was standing over her. Each shot required him to pull the trigger and the shots were all to her torso region. From these facts, the jury could reasonably infer defendant made a conscious decision to kill Johnson.

Defendant insists there is no evidence of planning because it is possible that someone else put the gun in the car and that he wore the mask "to keep germs away." He also contends that, had the murder been planned, he would not have done it at a place commonly surveilled by security cameras and he would have disposed of more of the evidence. Given the deferential standard of review, we reject such alternate inferences. (See *People v. Myles* (2023) 89 Cal.App.5th 711, 740 ["for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict"].) Defendant also argues his shooting of Johnson so many times suggests rage, not careful consideration. Even if we indulged that inference, rage and premeditation are not mutually exclusive. (See *People v. Thomas* (1992) 2 Cal.4th 489, 518 [explaining that defendant's conduct, "while suggestive of rage," did "not preclude an inference of premeditation"].)

Accordingly, substantial evidence supports the jury's determination that the murder was deliberate and premeditated.

## II

Next, defendant contends his trial counsel was constitutionally ineffective for failing to raise certain legal arguments and discuss the mitigating circumstances detailed in the *Franklin* statement. More specifically, defendant claims trial counsel should have argued that the firearm enhancement be dismissed under section 1385, subdivision (c) due to the childhood trauma discussed in the *Franklin* statement.[1] He also claims trial

---

[1] Section 1385, subdivision (c)(1) provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so" and directs the court in exercising its

7

counsel should have argued for the lower term for the firearm offense under section 1170, subdivision (b)(6) due to defendant's youth and his childhood trauma.**2**

To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) If either element is missing, the defendant's claim of ineffective assistance fails. (*Strickland*, at p. 697.) To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.) "In demonstrating prejudice, the appellant 'must carry his burden of proving prejudice as a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel.' " (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.)

Defendant fails to establish that the claimed omissions prejudiced him. Defendant presumes the *Franklin* statement proves he suffered childhood trauma and that such trauma contributed to the murder. But the statement includes accounts of multiple people, including defendant himself, that cast doubt on the claim that defendant was abused as a child. We are thus not persuaded that, had defense counsel directed the trial court's attention to the *Franklin* statement, the court would have concluded defendant

---

discretion to "consider and afford great weight to evidence" that "[t]he current offense is connected to prior victimization or childhood trauma." (§ 1385, subd. (c)(2)(E).)

**2** Section 1170, subdivision (b)(6) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if certain factors are present and were "contributing factor[s] in the commission of the offense." Those factors include that the defendant "has experienced psychological, physical, or childhood trauma" and that the defendant "is a youth," which for purposes of the statute means any person under 26 years of age on the date the offense was committed. (§§ 1170, subd. (b)(6)(A), (B), 1016.7, subd. (b).)

suffered childhood trauma that contributed to the offense under section 1385, subdivision (c) or section 1170, subdivision (b)(6).

Further, the trial court was already aware of many of the circumstances raised in defendant's *Franklin* statement. The probation report discussed how defendant did not get along with his mother and defendant's belief that he suffered from depression, anxiety, anger issues, and post-traumatic stress disorder due to witnessing his brother getting shot. The probation report also expressly raised defendant's youth as a mitigating circumstance. Despite knowing all this, the trial court still declined to strike or reduce the firearm enhancement and imposed the upper term.

We are also not persuaded that the additional details discussed in the *Franklin* statement would have impacted the trial court's decision given the court's stated views about defendant and the case, and the numerous aggravating circumstances relied on to impose the upper term. For instance, we are not convinced the *Franklin* statement's claim that defendant was "extremely remorseful"—as reported by a private investigator after defendant declined to personally comment for the probation report or speak at the sentencing hearing—would be assigned much weight by the trial court. Nor are we convinced that any additional legal argument would have resulted in a different outcome because, absent evidence to the contrary, we presume the trial court was aware of the relevant law. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)

Because it is not reasonably probable defendant would have achieved a better result but for the claimed errors, we reject his claim of ineffective assistance of counsel.

### III

Lastly, defendant contends he could not be punished for both murder with a firearm and illegal possession of a firearm. We disagree.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one

9

provision." " 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) We must uphold the trial court's finding if substantial evidence supports it. (See *People v. Fuentes* (2022) 78 Cal.App.5th 670, 680.)

Whether the unlawful possession of a firearm " ' "constitutes a divisible transaction from the offense in which [a defendant] employs the weapon depends upon the facts and evidence of each individual case." ' " (*People v. Jones*, *supra*, 103 Cal.App.4th at p. 1143.) "It is clear that multiple punishment is improper where the evidence 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense . . . .' " (*Id.* at p. 1144; see, e.g., *People v. Bradford* (1976) 17 Cal.3d 8, 13, 22-23 [multiple punishment improper where defendant shot an officer with a gun that he wrested from the officer].) But section 654 does not apply "where the evidence shows that the defendant possessed the firearm before the crime, with an independent intent." (*Jones*, at p. 1144.)

Section 654 does not bar multiple punishment here. The evidence shows defendant arrived in the car where the gun was located and that he knew it was in the car. It can reasonably be inferred that defendant brought the gun with him to the gas station and thus possessed it prior to the killing. Further, defendant left the gas station with the gun, and thus also possessed it after the killing. (See *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1413 [concluding that § 654 did not apply because a "justifiable

10

inference from th[e] evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued . . . after those crimes"].)  The trial court properly imposed punishment for both the murder (and the associated firearm enhancement) and the possession of a firearm by a felon.

## DISPOSITION

The judgment is affirmed.


                  /s/
                  MESIWALA, J.


We concur:


/s/
MAURO, Acting P. J.


/s/
KRAUSE, J.