Filed 2/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTOINE LEON RICHARDSON,<br><br>    Defendant and Appellant. | B335039<br><br>(Los Angeles County<br>Super. Ct. No. MA084241) |

---

APPEAL from a judgment of the Superior Court of Los Angeles County. Daviann L. Mitchell, Judge. Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury convicted defendant Antoine Leon Richardson of being a felon in possession of a firearm, being a felon in possession of ammunition, and misdemeanor exhibiting a concealable firearm in public. On appeal, we conclude Richardson's convictions for being a felon in possession of a firearm and ammunition are constitutional because only law-abiding citizens are among the class of people covered by the text of the Second Amendment. We also conclude that substantial evidence supports the trial court's implied finding that Richardson's convictions for possessing a firearm and exhibiting a firearm in public involved separate objectives for purposes of Penal Code[1] section 654. Accordingly, we affirm.

## FACTUAL BACKGROUND

In September 2022, Mckyla Middleton went to a liquor store in Lancaster. As Middleton approached the store, Richardson accused her of cutting him off. Richardson walked into the store before Middleton and tried to close the door to prevent her from entering. After Middleton entered the store, Richardson continued to claim that she cut him off. Richardson cursed at Middleton and threatened to beat her up.

When Middleton left the store, Richardson followed her to her car. Middleton got inside her car, locked the doors, and started the engine. Before Middleton could drive away, Richardson approached the driver side window of her car and flashed a gun. According to Middleton, Richardson pulled part of

---

[1] All further undesignated statutory references are to the Penal Code.

the gun out of a satchel that he was wearing and said, " 'That's what you get.' "

The police searched Richardson's home in November 2022. They found many rounds of handgun and rifle ammunition inside a closet. The police did not find any guns in Richardson's home.

Richardson was later arrested and interviewed by the police. Richardson admitted that in September 2022, he was at the Lancaster liquor store, where he brandished a gun during an argument with a female. Richardson also admitted that the ammunition found inside his home during the November 2022 search belonged to him.

## PROCEDURAL BACKGROUND

In an amended information, the People charged Richardson with being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1); count 1); misdemeanor exhibiting a concealable firearm in public (§ 417, subd. (a)(2)(A); count 2); and being a felon in possession of ammunition (§ 30305, subd. (a)(1); count 3). As to counts 1 and 3, the People alleged that Richardson suffered prior felony convictions for willful infliction of corporal injury (§ 273.5, subd. (a)) and two counts of vehicle theft (Veh. Code, § 10851, subd. (a)). As to count 1, the People also alleged an aggravating sentencing factor under rule 4.421(b)(1) of the California Rules of Court.

A jury found Richardson guilty of counts 1 through 3. The jury also found that Richardson suffered three prior felony convictions and, as to count 1, it found true the aggravating sentencing factor. The court sentenced Richardson to a total of three years and eight months in prison for counts 1 and 3, and it imposed a concurrent 364-day term for count 2.

Richardson appeals.

3

# DISCUSSION

## 1. Richardson's convictions for being a felon in possession of a firearm and ammunition do not violate the Second Amendment

Relying on *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), Richardson contends his convictions for being a felon in possession of a firearm and ammunition must be reversed because section 29800, subdivision (a)(1), and section 30305, subdivision (a)(1), violate the Second Amendment. We disagree.

As a threshold matter, Richardson did not argue below that sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1) are unconstitutional as applied to him, even though *Bruen* was decided more than a year before his trial began. Richardson is, therefore, limited to raising a facial challenge to the constitutionality of those statutes. (See *People v. Anderson* (2024) 104 Cal.App.5th 577, 583–584 (*Anderson*) [facial challenges that present pure questions of law may be raised for the first time on appeal].)

When reviewing a facial challenge to the constitutionality of a statute, we consider only the text of the statute, not its application to the particular circumstances of an individual. (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474 (*Alexander*).) We will not invalidate a statute unless it " ' "pose[s] a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Ibid*.) We independently review whether a statute is constitutional. (*Ibid*.)

The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the

4

people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.)

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court invalidated laws banning the possession of handguns inside the home. (*Id.* at p. 635.) The Court recognized that the Second Amendment's protections are "not unlimited" and do not confer a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller*, at p. 626.) Nevertheless, the Court held, the challenged laws violated the amendment's guarantee of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (*Id.* at p. 635.) The Court explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Id.* at pp. 626–627.)

In *McDonald v. City of Chicago* (2010) 561 U.S. 742 (*McDonald*), the Court held that the Second Amendment applies to states through the Fourteenth Amendment. (*McDonald*, at p. 791.) The Court reiterated that nothing in its decision should cast doubt on laws prohibiting, among other things, " 'the possession of firearms by felons and the mentally ill.' " (*Id.* at p. 786.)

In *Bruen*, the Court clarified its test for assessing the constitutionality of firearm regulations under the Second Amendment. The Court explained, "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The

5

government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (*Bruen*, *supra*, 597 U.S. at p. 24.)

Applying this test, the Court in *Bruen* struck down New York's concealed carry law, which required applicants to show proper cause to get a license, because the law impermissibly prevented "law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Bruen*, *supra*, 597 U.S. at p. 71.)  The court explained that its decision did not call into question the constitutionality of " 'shall-issue' " licensing schemes implemented by 43 other states, "under which 'a general desire for self-defense is sufficient to obtain a [permit].' [Citation.]  Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." (*Id.* at p. 38, fn. 9.)

Notably, the Court in *Bruen* acknowledged that its decision was consistent with *Heller* and *McDonald*, which held "that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." (*Bruen*, *supra*, 597 U.S. at pp. 8–9.)  The Court also emphasized that the petitioners in *Bruen*, in whose favor it ruled, were "law-abiding" citizens and, as such, "part of 'the people' whom the Second Amendment protects." (*Id.* at pp. 31–32.)

Most recently, in *United States v. Rahimi* (2024) 602 U.S. 680 (*Rahimi*), the Court upheld a federal statute prohibiting

6

possession of firearms by persons subject to domestic violence restraining orders.  The Court clarified that to be constitutional, a firearm regulation need not "be a 'dead ringer' or a 'historical twin' " to a traditional form of firearm regulation.  (*Id*. at p. 692.)  Instead, the challenged regulation must simply "comport with the principles underlying the Second Amendment." (*Ibid*.)  After reviewing the history of firearm regulation under English and early American law, the court concluded that history "confirm[ed] what common sense suggests:  When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." (*Id*. at p. 698.)  Quoting *Heller*, the Court reiterated that many presumptively lawful firearm regulations prohibit "the possession of firearms by 'felons and the mentally ill.' " (*Rahimi*, at p. 699.)

Here, sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1), criminalize the possession of firearms and ammunition, respectively, by individuals who have been convicted of felonies.[2]  In *Alexander*, Division Two of the Fourth

---

[2]	Section 29800, subdivision (a)(1) provides:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

Section 30305, subdivision (a)(1) provides:  "No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have

District held that these statutes do not violate the Second Amendment. (*Alexander*, *supra*, 91 Cal.App.5th at pp. 477–480.) The court explained that the conduct criminalized by the statutes is not covered by the Second Amendment "because according to *Heller* and *Bruen* only law-abiding citizens are included among 'the people' whose right to bear arms is protected by the Second Amendment." (*Alexander*, at p. 478.) Since convicted felons are, by definition, not law-abiding citizens, they do not have the right to possess firearms under the Second Amendment. (*Alexander*, at p. 479.)

Several courts have since followed the same or similar reasoning as *Alexander* to uphold the constitutionality of sections 29800, subdivision (a)(1), 30305, subdivision (a)(1), and similar statutes. (See, e.g., *People v. Odell* (2023) 92 Cal.App.5th 307, 316–317 (*Odell*); *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1300–1302; *In re D.L.* (2023) 93 Cal.App.5th 144, 166.)

In *Anderson*, Division Three of the First District also held that sections 29800, subdivision (a)(1), 30305, subdivision (a)(1), and another firearm-related statute do not violate the Second Amendment. (*Anderson*, *supra*, 104 Cal.App.5th at pp. 583–600). In doing so, however, the court concluded that the Second Amendment's text applies to convicted felons, rejecting the reasoning that "*only* law-abiding, responsible citizens are among 'the people' covered by" the amendment's text. (*Anderson*, at pp. 587–589.)

After conducting a thorough review of "sources from 17th-Century England, colonial America, and the early federal period,"

---

under custody or control, any ammunition or reloaded ammunition."

*Anderson* concluded that "California's felon-in-possession firearm regulations comport with our national tradition of firearm regulation. In that tradition, categories of persons thought to pose a danger to the community were forbidden to have arms, and individuals were sometimes disarmed as a consequence of being convicted of criminal conduct. When the founding generation framed and debated constitutional text, it considered such limitations inherent in the right the Second Amendment protects." (*Anderson, supra*, 104 Cal.App.5th at p. 589.) *Anderson* emphasized that "categorical disarmament laws are not inconsistent with the Second Amendment." (*Id*. at p. 598.) Indeed, the court noted, the "historical evidence shows that individuals were disarmed as a preventative measure when the law assessed they were unwilling to respect sovereign authority, *and* they were disarmed as a sanction for criminal conduct, whether or not involving physical violence. California's felon disarmament measures are ' "relevantly similar" ' in serving both of these purposes." (*Ibid*.)

We agree with the reasoning of *Alexander*, *Odell*, and similar cases that under the United States Supreme Court's precedent, only "law-abiding" citizens are among the class of people covered by the text of the Second Amendment. (See *Alexander, supra*, 91 Cal.App.5th at pp. 478–479; *Odell, supra*, 92 Cal.App.5th at pp. 316–317.) Because the possession of firearms and ammunition by convicted felons is not protected by the Second Amendment, sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1) are constitutional. In any event, even assuming convicted felons are covered by the text of the Second Amendment, we agree with *Anderson* that sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1), are consistent

with our national tradition of firearm regulation and, as such, are facially valid.

Richardson contends the Ninth Circuit's decision in *United States v. Duarte* (9th Cir. 2024) 101 F.4th 657 (*Duarte*) compels a different result in this case. In *Duarte*, the Ninth Circuit held that a federal statute prohibiting the possession of firearms by anyone who has been convicted of an offense punishable by more than one year in prison was unconstitutional as applied to the defendant. (*Id.* at pp. 670–691.) The court explained that the government failed to present any evidence that the defendant's underlying convictions, none of which were for violent offenses, "were, by Founding era standards, of a nature serious enough to justify permanently depriving him of his fundamental Second Amendment rights." (*Id.* at p. 691; see also *id.* at p. 663, fn. 1 [noting that the government conceded that none of the defendant's convictions were for violent offenses].)

We decline to follow *Duarte* for a few reasons. First, the Ninth Circuit granted rehearing en banc in that case, and the decision in *Duarte* has since been vacated. (See *United States v. Duarte* (9th Cir. 2024) 108 F.4th 786.) Second, even assuming *Duarte* remains good law, we are not bound by decisions of the Ninth Circuit (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 461), and we find more persuasive the California authority discussed above upholding the constitutionality of sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1). Third, unlike Richardson, the defendant in *Duarte* raised an as-applied challenge to the federal firearm regulation under which he was convicted. Thus, the court in *Duarte* did not consider whether that statute was constitutional on its face. (See *Rahimi*, *supra*, 602 U.S. at p. 681 [a facial challenge requires the defendant to

10

establish that " 'no set of circumstances exists under which the [law] would be valid' "].)

Finally, we reject Richardson's contention that insufficient evidence supports his convictions for being a felon in possession of a firearm and ammunition "under a proper interpretation of sections 29800 and 30305." As we just explained, those statutes are valid on their face under the Second Amendment. Richardson does not dispute that he possessed a firearm and ammunition as a convicted felon, nor does he contend that the People otherwise failed to prove he violated sections 29800, subdivision (a)(1), and 30305, subdivision (a)(1). Richardson has, therefore, failed to show substantial evidence does not support his convictions for being a felon in possession of a firearm and ammunition. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 [on a substantial evidence challenge, the appellant "must *affirmatively demonstrate* that the evidence is insufficient"].)

2. **The court's imposition of multiple sentences for Richardson's firearm-related convictions does not violate section 654**

Next, Richardson argues the court erred when it did not stay his sentence for exhibiting a firearm in public under section 654. We disagree.

Under section 654, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute applies not only where there was one "act" in the ordinary sense, but also where an indivisible course of conduct violated more than one statute. (*Neal v. State of*

11

*California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, 334.)

" 'It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.' " (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) " '[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once.' " (*Ibid*.) But if the defendant acts with multiple criminal objectives that are independent of, and not merely incidental to, each other, he may be punished for separate violations, even though the violations shared common acts or were part of an otherwise indivisible course of conduct. (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737 (*Vasquez*).)

A court's determination, express or implied, "that two crimes were separate, involving separate objectives," under section 654 is a question of fact we review for substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) We review the evidence in the light most favorable to the judgment and will affirm the court's sentencing decision if it is supported by substantial evidence. (*Vasquez*, *supra*, 44 Cal.App.5th at p. 737.) As we explain, substantial evidence supports the court's implied finding that section 654 does not apply to Richardson's felon in possession of a firearm and exhibiting a firearm in public convictions.

Whether being a felon in possession of a firearm is a " ' "divisible transaction from the offense in which [the defendant] employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession

12

distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved.  On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." ' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

Generally, section 654 bars multiple punishment where "the evidence 'demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense,' " such as when the defendant obtains a firearm during a struggle that immediately precedes his use of the weapon to assault the victim.  (*Jones*, *supra*, 103 Cal.App.4th at p. 1144.)  On the other hand, multiple punishment is permissible where "the evidence shows that the defendant possessed the firearm before the crime, with an independent intent."  (*Ibid*.)  Thus, section 654 typically does not apply if the defendant arrived at the scene of the other offense already in possession of the firearm.  (*Id*. at p. 1145.)

Here, the evidence supports an implied finding that Richardson possessed the gun before he flashed it at Middleton.  Middleton testified that she saw Richardson pull part of the gun out of a satchel that he was wearing, while Richardson admitted that he "brandished" the gun from his waist.  No evidence was presented that suggests Richardson fortuitously obtained the gun shortly before he threatened Middleton with it.  Based on this evidence, the court reasonably could find that Richardson harbored separate intents when he possessed the gun—i.e., an intent to possess a firearm—and when he exhibited the gun in public—i.e., an intent to scare or threaten Middleton.

Section 654, therefore, does not prohibit the imposition of multiple sentences for Richardson's convictions for being a felon in possession of a firearm and exhibiting a firearm in public. (*Jones*, *supra*, 103 Cal.App.4th at pp. 1144–1145.)

## DISPOSITION

The trial court's judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


GRIMES, J.